FOURNIER FURNITURE,
INC., Plaintiff,

v.

WALTZ-HOLST BLOW PIPE
COMPANY, Defendant.

No. CIV.A. 96–152–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Nov. 3, 1997.

Mary Lynn Tate, Tate, Lowe & Rowlett, Abingdon, VA, for Plaintiff.

Emmitt F. Yeary, Yeary & Associates, Abingdon, VA, Stephen A. Hilger, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

In this diversity action, the plaintiff seeks recovery because an industrial furnace designed, constructed and installed by the defendant allegedly failed to perform as promised. The defendant moves for summary judgment, claiming that there were no express warranties in the contract between the parties, and that because the contract does not fall within the Uniform Commercial Code, there were no implied warranties. The defendant also asserts that the plaintiff's claim is barred by its misuse of the furnace. Alternatively, the defendant contends that the plaintiff's damages ought to be limited to the contract price of the furnace.

Based on the record, I deny the motion for summary judgment, finding that express and implied warranties potentially exist, and that whether the plaintiff misused the furnace is a factual issue for resolution at trial. Finally, I hold that while the plaintiff's damages may be limited, the record at this point does not permit a determination of such limitations.

### I.  Background.

The plaintiff Fournier Furniture, Inc. ("Fournier"), is a manufacturer of wood furniture products and operates a manufacturing facility in St. Paul, Virginia. In 1994 the defendant, Waltz–Holst Blow Pipe Company ("Waltz–Holst"), contracted to design, fabricate and install a furnace or "burn cell" that would dispose of Fournier's waste sawdust. The contract price for the furnace and certain ancillary equipment was $336,000. In 1996 Fournier filed this action against Waltz–Holst, claiming that the completed furnace did not meet the specifications of the contract, and in particular that it did not meet the promised burn rate of 2500 pounds of

waste per hour. The complaint asserted causes of action based on negligence, breach of contract and breach of warranty.

On a motion for partial summary judgment, I earlier dismissed the negligence count of the complaint (count I) because the plaintiff seeks solely economic losses. Based on discovery depositions, the defendant now challenges the remaining two counts of the complaint.

## II. Standard of Review.

Summary judgment is only appropriate where, on the substantive legal questions, there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. In determining whether disputed issues of fact exist, all reasonable inferences must be drawn in favor of the nonmoving party, in this case, Fournier. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

## III. Implied Warranties.

■ The contract between the parties consisted of a written quotation from Waltz–Holst to Fournier, dated March 7, 1994, which was accepted by a purchase order from Fournier dated the next day, March 8, 1994. Waltz–Holst argues that these written documents, on their faces, show that the transaction does not fall within the sales provisions of Virginia's version of the Uniform Commercial Code ("UCC"),[1] and thus there are no implied warranties upon which Fournier can rely.[2]

■ Article 2 of the UCC limits its application to "goods," Va.Code Ann. §§ 8.2–102, 8.2–105, and while Virginia's highest court has not spoken to the issue, the general rule is that courts should examine any contract which contemplates both services and goods and determine whether goods or services predominate in the particular case. *See Flowers Ginning Co. v. ARMA, Inc.*, 1997 WL 26573, at *3 (4th Cir.1997) (unpublished) (applying Georgia law); *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 458–60 (4th Cir.1983) (applying Maryland law). The court should consider such factors as the language of the contract, the structure of the compensation, and the ratio of material supplied to labor expended. *Lane Const. Corp. v. Trading Merchandising Co.*, 24 UCC Rep. Serv.2d 797, 799, 1994 WL 746251 (Va. Cir. Ct.1994).

■ The only factor apparent on the present record is the language of the contract. While Waltz–Holst's quotation referred to services in the form of "design, fabricat[ion] and install[ation]," it also described in detail the goods to be provided. Waltz–Hoist referenced "sales and use taxes" and described itself as "manufacturers," as well as "engineers" and "contractors." Similarly, Fournier used contract language associated with the sale of goods. Fournier accepted Waltz–Holst's quotation on a form referring to Waltz–Holst as "vendor" and describing the purchase with reference to "quantity" and "unit price." The utilization of such sales language is a strong indication of the proper characterization of the agreement. *See Wellmore Coal Co. v. Powell Const. Co.*, 600 F.Supp. 1042, 1047 (W.D.Va.1984).

■ Accordingly, since the agreement is dominated by language designating a sale of goods, I find that the agreement at issue does contain the UCC implied sales warranties.[3]

---

1. Va.Code Ann. §§ 8.2–201–725 (Michie 1991 & Supp.1997). The parties are agreed that Virginia law applies in this diversity case. In a diversity case, this court must apply Virginia's conflict of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The contract was to be performed in Virginia. Under Virginia law, everything relating to performance of a contract is to be controlled by the law of the place of performance. *Occidental Fire & Cas. Co. v. Bankers & Shippers Ins. Co.*, 564 F.Supp. 1501, 1503 (W.D.Va.1983).

2. The UCC provides for implied warranties of merchantability, Va.Code Ann. § 8.2–314, and fitness for a particular purpose, Va.Code Ann. § 8.2–315, in connection with a sale of goods, unless effectively modified or excluded. *See* Va. Code Ann. § 8.2–316.

3. In any event, as Fournier correctly points out, Virginia contract law supplies similar implied warranties in building and construction contracts, apart from the UCC. *See, e.g., Hall v. MacLeod*, 191 Va. 665, 62 S.E.2d 42, 45 (1950). Thus, even if the contract were to be construed

## IV. Express Warranties.

Fournier relies on express warranties, as set forth in Waltz–Holst's quotation of March 7, 1994. The UCC declares that an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Va.Code Ann. § 8.2–313(1)(a). At the same time, the UCC states that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Va.Code Ann. § 8.2–313(1)(b). In this respect, the UCC follows general contract law. *See Hall v. MacLeod*, 62 S.E.2d at 45. Accordingly, the plaintiff asserts a proper claim that the specifications for the furnace referred to in the seller's quotation constituted express warranties for the furnace's performance.

Moreover, Waltz–Holst's argument that Fournier cannot claim both implied and express warranties is incorrect. Va.Code Ann. § 8.2–317; *See Lyon v. Shelter Resources Corp.*, 40 N.C.App. 557, 253 S.E.2d 277, 281 (1979). Neither party alleges that the implied warranties conflict with the express promises made by Waltz–Hoist. And express warranties only preclude implied warranties where they contain the same subject matter and thus may conflict. *See Southern Biscuit Co. v. Lloyd*, 174 Va. 299, 6 S.E.2d 601, 606 (1940).

Finally, Waltz–Hoist contends that the breach of contract count ought to be dismissed, because the contract has been "fully performed." However, it is clear that the breach of contract count simply seeks recovery for breach of the express and implied warranties or promises, relating to the performance of the furnace. "A 'breach of contract' is defined as a 'failure, without legal excuse, to perform any promise which forms the whole or part of a contract.'" *Clevert v. Jeff W. Soden, Inc.*, 241 Va. 108, 400 S.E.2d 181, 183 (1991) (quoting *Black's Law Dictionary* 188 (6th ed.1990)). Fournier is not

entitled to double recovery, and the counts of its complaint may overlap and to that extent be surplusage, but that is no basis for summary judgment.

## V. Misuse.

Waltz-Hoist maintains that it provided plaintiff with a furnace that functioned according to the parties' agreed upon specifications and that the furnace's subsequent malfunctioning is attributable to Fournier's gross misuse of the product. Among its many allegations of misuse, Waltz–Hoist claims that Fournier burned substances other than sawdust in the furnace, and that Fournier failed to properly clean and maintain the furnace. Fournier, however, denies misusing the furnace. Rather, Fournier maintains that it used the furnace in accordance with defendant's recommendations and instructions, and only used it in a reasonable manner consistent with the normal course of its business. Fournier also alleges that when the defendant warrantied the furnace, the defendant was aware of the nature of plaintiffs business and its intended use for the furnace.

Under Virginia law, misuse of a product bars claims of breach of warranty. *Besser Co. v. Hansen*, 243 Va. 267, 415 S.E.2d 138, 144 (1992). Misusing a product means using it in a manner which the seller could not have reasonably foreseen. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988). A court may appropriately grant the defendant summary judgment if the plaintiff clearly misused a product, and that misuse was the sole proximate cause of damage or the intervening or superseding cause of damage. *Id.*

Summary judgment is only appropriate where there are no genuine issues of material fact, and in this case, the parties dispute whether Fournier misused the furnace. Moreover, even if it were uncontested that Fournier misused the furnace, a second question of material fact precludes summary judgment in this case; the parties do not

as a contract for construction services, this is an alternative ground for denying defendant's mo-

tion for summary judgment.

agree whether the plaintiff's alleged misuse of the furnace or the defendant's breach of warranties and contract was the proximate cause of the furnace's failure. Generally, proximate cause is a question for the jury. Only where persons of reasonable minds may not fairly differ on the proper inferences to be drawn from the facts, does the issue of proximate cause become a question for the court. *Hubbard v. Murray*, 173 Va. 448, 3 S.E.2d 397, 402 (1939). Whether the product was misused, whether such misuse was foreseeable, and whether such misuse caused the product's failings are questions best answered by a jury that has had the opportunity to hear the parties' fully developed evidence. Therefore, summary judgment is inappropriate in this case.

## VI. Damages.

Fournier seeks damages in excess of $3,000,000 for items such as repairing the furnace, replacing parts, and disposing of its commercial waste by alternative methods while the furnace was not operational. However, Waltz–Holst claims that Fournier is seeking excessive damages and asks this court to limit plaintiff's damages to no more than "(a) the contract price of the furnace, (b) less the value that Plaintiff received from using the furnace for almost two years; (c) less the salvage value of the furnace, (d) less an amount ... associated with the claimed measure of the furnace by the Plaintiff, and (e) less an amount, if any, to be determined by the trier of fact to be due ... to Waltz–Hoist on its counterclaim." (Def. Mot. For Summ. J., Jul. 11, 1997, at ¶ 7 .)

■ Waltz-Hoist maintains that plaintiff's damages must be limited in order to prevent a windfall and to prevent plaintiff from collecting damages from circumstances for which Waltz–Hoist was not the cause. For example, Waltz–Hoist maintains that it should not be liable for Fournier's disposal costs during the time that the furnace was not functioning since Fournier would have incurred disposal costs even had it never contracted with Fournier. Fournier does not dispute that it should not receive a windfall or double recovery.[4] However, it is not necessary to limit Fournier's theories of recovery at this point in order to prevent unjust enrichment. At trial, the plaintiff will be required to prove that its alleged damages were caused by the defendant's breach of contract and the court will then ensure through proper jury instructions that damages are not duplicative. In addition, the court will be able to appropriately limit evidence at trial in order to prevent jury confusion.

■ There is also no reason to cap Fournier's possible damages at the contract price since under the UCC, as adopted by Virginia, a buyer may recover incidental and consequential damages which can exceed the anticipated price "bargained for" by the parties.[5] Va.Code Ann. § 8.2–715. If a functioning furnace would have prevented Fournier from incurring costly disposal techniques, appropriate consequential damages might include the cost of alternative waste disposal while the furnace was not functioning. After all, a buyer is entitled to be put in the position it would hold if the contract had been fulfilled rather than the position it would hold if the contract had never been formed.[6] Where a buyer accepts goods and

---

4. Plaintiff states that "[o]bviously plaintiff cannot recover inconsistently for both repair and removal and related damages but is entitled to put on evidence of both scenarios if it chooses." (Pl's Mem. In Opp. To Def's Mot. For Summ. J., Aug. 7, 1997, at 28.)

5. Neither would plaintiff's damages necessarily be capped at the contract price under the common law. *See Shenandoah Milling Co. v. Phosphate Products Corp.*, 161 Va. 642, 171 S.E. 681, 684 (1933) (damages for breach of contract include losses fairly anticipated under the contract and what might naturally flow from the breach of contract).

6. Remedies "shall be liberally administered to the end that the aggrieved party *may be put in as good a position as if the other party had fully performed.*" Va.Code Ann. § 8.1–106 (Michie 1991) (emphasis added). Likewise, the law states that the aggrieved party shall recover the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have been if they had been as warranted, unless special circumstances show proximate damages of a different amount." Va. Code Ann. § 8.2–714(2); *Wharton, Aldhizer & Weaver v. Savin Corp.*, 232 Va. 375, 350 S.E.2d 635, 636 (1986). Of course, contract damages are always limited by the general rule requiring a

gives reasonable and timely notification that the goods are inadequate, the buyer "may recover as damages for any nonconformity of tender the loss resulting in the ordinary recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined *in any manner which is reasonable.*" Va.Code Ann. § 8.2–714(1) (emphasis added). Thus, Waltz–Holst's request to limit plaintiff's damages to no more than the contract price is denied.

### VII. Conclusion.

For the foregoing reasons, it is **ORDERED** that the defendant's motion for summary judgment (Doc. No. 24) is denied.

plaintiff to make reasonable efforts to minimize consequential damages resulting from a breach. *See Haywood v. Massie,* 188 Va. 176, 49 S.E.2d 281, 284 (1948).