# CIRCUIT COURT OF THE CITY OF CLIFTON FORGE

Evelyn B. Snead

v.

Ford Motor Company

October 27, 1998

BY JUDGE DUNCAN M. BYRD, JR.

On September 28, 1998, the Court heard arguments upon defendant's Demurrer, Plea of Statute of Limitations, and Motion for Summary Judgment. At the conclusion of the hearing, the Court reserved judgment, pending a review of the arguments and memoranda of counsel. The Court has now done so. For reasons which follow, the Court concludes the economic loss doctrine under Virginia law bars plaintiff's recovery for damages.

The material facts are as follows.

Ford manufactured the subject vehicle Lincoln Town Car on March 14, 1988. Plaintiff's insured, Evelyn Snead, purchased the vehicle later in the same year. On or about January 31, 1997, a fire ignited in the steering column of the car while Ms. Snead was driving. The fire caused $8,170.00 of damage to the vehicle, but no further property damages nor personal injuries resulted form the incident. Plaintiff alleges that Ford's defective manufacturing and/or installation of the ignition switch caused the fire in the vehicle and asserts that an action in tort therefor exists. Defendant Ford responds that the economic loss doctrine bars plaintiff's tort claims.

The applicability of the economic loss doctrine determines the outcome of the case because if the plaintiff must proceed under contract/warranty law, the relevant statute of limitations, Va. Code Ann. § 8.2-725, allows only four years from the tender of delivery. If, on the other hand, a tort claim exists, then the germane statute of limitations, Va. Code Ann. § 8.01-243(B), allows five years from the date of the fire.

Defendant properly asserts that Virginia recognizes the economic loss doctrine. *Beard Plumbing and Heating, Inc. v. Thompson Plastic, Inc.*, 254

Va. 240, 491 S.E.2d 731 (1997); *Gerald M. Moore & Son, Inc. v. Drewry*, 251 Va. 277, 467 S.E.2d 811 (1996); *William Ward v. Ernst & Young*, 246 Va. 317, 425 S.E.2d 628 (1993); *Rotonda Condo. Owners v. Rotonda Assoc.*, 238 Va. 85, 380 S.E.2d 876 (1989); *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988); *Blake Constr. Co. v. Alley*, 233 Va. 31, 352 S.E.2d 724 (1987).

Of the authorities listed, *Sensenbrenner* describes the economic loss doctrine in most detail. Here, the plaintiff alleged negligent design and construction of a pool by subcontracted architects and contractors. The district court granted defendants' Rule 12(b)(6) motions arguing that the economic loss doctrine barred plaintiff's claims. On certification from the United States Court of Appeals for the Fourth Circuit, the Virginia Supreme Court then endorsed the District Court's ruling. The court stated that many courts had considered when damages cross a dividing line from economic loss to physical injury. "Most jurisdictions equate economic losses, for which no action in tort will lie, with disappointed economic expectations. This is clearly the prevailing rule where damage is claimed because goods purchased fail to meet some standard of quality." *Sensenbrenner*, 236 Va. at 423, 374 S.E.2d at 59. Thus, in transactions involving sales of goods, as in the instant case, warranty and contract law must protect the parties' economic expectations.

The Court further opined that often an inspection of policy issues better illuminates the distinction between economic loss and tortious injury. Whereas the policy basis for tort law is "the protection of persons and property from losses resulting from injury ... the controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." *Id.*, 236 Va. at 425, 374 S.E.2d at 61.

Among the authorities upon which the court in *Sensenbrenner* relied was *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986). There, the Supreme Court applied the economic loss doctrine to admiralty law, while also speaking of the rule more generally. "Damages to a product itself have certain attributes of a products-liability claim. But the injury suffered — the failure of the product to function properly — is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *East River*, 476 U.S. at 868.

Perhaps more saliently, the Court refused to adopt a rule permitting tort recovery where a "sudden, calamitous event" triggers the failure or defect. *Id.*, 476 U.S. at 870. In rejecting this concept, the Supreme Court emphasized the necessity of maintaining different spheres of products liability and contract law. Furthermore, it found that allowing tort recovery in such ambiguous

circumstances would be "too indeterminate to enable manufacturers easily to structure their business behavior." *Id.*

In *Virginia Transformer Corp. v. P. D. George Co.*, 932 F. Supp. 156 (W.D. Va. 1996), the Federal Court for the Western District of Virginia followed the Virginia law as held in *Sensenbrenner*. In endorsing the economic loss doctrine, the court emphasized that "without this rule, every breach of contract case would be transformed into tort." *Virginia Transformer*, 932 F. Supp. at 161 (citing *Kamlar Corp. v. Haley*, 224 Va. 699, 702, 299 S.E.2d 514, 517 (1983)). Further, the Court favored the Missouri case of *Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo. 1978), in which the Court specified that "the economic loss rule applies to cases of defective products where the only injury is to the product itself." *Virginia Transformer*, 932 F. Supp. at 162 (quoting *Crowder*, 564 S.E.2d at 882). Applying the *Crowder* interpretation to the facts in the current case, the lack of personal injury or of damage to any property beyond the automobile necessitates application of the economic loss doctrine.

In *Fournier Furniture, Inc. v. Waltz-Holst Blow Pipe Co.*, 980 F. Supp. 187 (W.D. Va. 1997), another federal court observed the same interpretation of the economic loss doctrine under Virginia law. *Fournier* is additionally noteworthy because it addresses the issue of privity of contract. The court refused to adopt plaintiff's argument that because the parties had privity, the court should not apply the economic loss doctrine: "Privity of contract is not an element of the economic loss doctrine." *Fournier, supra* (quoting *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990)). The Court emphasized that most jurisdictions agree that privity is not determinative in economic loss doctrine issues. *Id.* Thus, in the instant case, the privity between Ms. Snead and Ford's dealership should not impede the application of the economic loss doctrine.

Plaintiff, however, seeks to further the distinction between economic loss and physical injury; relying on *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982), Plaintiff asserts that economic loss refers to situations involving deterioration due to inferior quality, whereas physical harm occurs anytime the defect causes an unreasonable risk of injury to the person or his property. The *Moorman* court believed that "when the defect causes an accident 'involving some violence or collision with external objects,' the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage or other non-accidental causes, it is treated as accidental loss." *Moorman*, 435 N.E.2d at 449 (quoting Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966)). The Court finds it noteworthy that this is the

exact argument that the Supreme Court rejected in *East River*, criticizing the indeterminate impact on manufacturers and demanding separation of products liability from contract law.

Other states have observed the *Moorman* analysis in associating physical injury to property with personal injury in terms of allowing tort recovery. For example, *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981), appears the most strongly worded argument for a broader interpretation of tort recovery. In holding that tort law best covers property damage resulting from a sudden or dangerous event, the court in *Pennsylvania Glass* stated: "Tort law imposes a duty on manufacturers to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself." *Pennsylvania Glass*, 652 F.2d at 1172. Plaintiff seeks adoption of this rationale.

In addition to *Moorman* and *Pennsylvania Glass*, plaintiff cites *Seely v. White Motor Co.*, 403 P.2d 145 (Cal. 1965). *Seely*, however, allowed recovery only on the basis of express warranty and refused to extend strict liability to solely economic losses. The California court instead suggested that the Uniform Commercial Code best remedies such claims and that tort should govern "the distinct problem of physical injuries." *Seely*, 403 P.2d at 149. Thus, *Seely* appears to offer little support to the plaintiff's argument; in fact, the reference to physical injuries as a distinct problem would suggest a narrow meaning of that term.

Nonetheless, plaintiff argues that because the ignition of fire in the subject vehicle's steering column posed a serious threat to Ms. Snead, the property damage should qualify as physical injury and, subsequently, as a tort action. It is true that courts such as *Moorman* and *Pennsylvania Glass* have adopted that view. Plaintiff is also correct in quoting Dean Prosser as including property damage in physical harm. William L. Prosser, *Torts*, § 101 at 665 (4th ed. 1971).

In the Court's view, the Virginia Supreme Court has not endorsed any such broad view of tort recovery. In fact, the cases which were most seminal in creating the Virginia law on the subject of economic loss are quite reluctant to widening the sphere of torts. Rather, this Court concludes that whether a product's failure is gradual or violently calamitous, "either way, since by definition no person or other property is damaged, the resulting loss is purely economic." *East River*, 476 U.S. at 870. Thus, the plain meanings of economic loss and physical injury should be maintained. Further, the ultimate ramifications of blurring the lines between products liability and contract law would surely find consumers paying more to insure manufacturers against excessive damages. Public policy is better served to maintain the distinct

spheres of each, particularly in light of the *East River* view that manufacturers could not adapt their behavior to a widening of the tort recovery.

For these reasons, the Court concludes that the defendant's Motion for Summary Judgment and Demurrer should be sustained.