MELVYN C. CLEVERT, ET AL.

V.

JEFF W. SODEN, INC.

Record No. 900714

January 11, 1991

Present: All the Justices

*S. Keith Barker* for appellants.
*G. A. Kalbaugh, Jr. (Richard S. Samet*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we examine the scope of a contractual commitment to pay the attorneys' fees of a successful litigant should a dispute arise out of a "default in the performance of this contract." Specifically, we decide whether this language excludes liability for such fees where the dispute arises out of a *defective* performance of the contract instead of its *non*performance.

On February 22, 1986, Jeff W. Soden, Inc. (Soden), a building contractor, agreed to sell, and Melvin C. Clevert and Teresa F. Clevert (collectively Clevert) agreed to buy, a lot to be improved by a house that Soden was to construct for Clevert. The purchase price of the house and lot was to be $165,000. Soden later acquired title to the lot for $25,000.

The relevant sales and construction agreements were contained in several documents, all of which were printed forms that had been filled out and executed at the same time. One document was a real estate sales contract form that reflected the increased sales price attributable to Soden's construction agreement. The parties' construction agreement was detailed on two other forms, each described as "an Addendum to the Real Estate Purchase Agreement . . . to be attached to said Agreement and made a part thereof."

The printed portion of the real estate sales contract form provided in part that

[i]f either party *defaults in the performance of this contract*, such defaulting party shall be liable for the commission to which the agent would have been entitled if the contract had been performed and any expenses incurred by the non-defaulting party or agent, including reasonable attorneys' fees in connection with this transaction and the enforcement of

this contract. The parties further agree that in the event purchaser shall default in the performance of this contract after its acceptance by seller, the deposit of [$10,000] shall inure to and become the property of [Soden's real estate agent] and shall be applied as credit on the commission due by the defaulting party.

(Emphasis added.)

Alleging breaches of the construction provisions of the contract, Clevert filed an action at law against Soden, and later recovered a $19,718 judgment. Of this amount, $1,850 represented delay damages, and $17,868 represented damages for defective workmanship and materials. Clevert also sought to recover his reasonable attorneys' fees and costs expended as a result of Soden's breach of contract, and presented evidence in support of his claim. The statement of facts, signed by counsel for both parties, recites that Soden did not offer

any evidence that would controvert whether the attorney's fees as reflected in the exhibits filed in this action and with the Court were reasonable, but rather the parties did not disagree as to whether the attorney's fees were reasonable, but whether they were allowed as a matter of law.

The trial court held that although Soden breached the contract, Soden did not default in its performance because "breach of contract is not default of the contract." Therefore, the court denied Clevert's claim for attorneys' fees and costs. Clevert appeals.

At the outset, Soden contends that because the contract imposed liability for the non-defaulter's attorneys' fees incurred "in the enforcement of this contract," it could be liable for such fees only in an "*enforcement* of the *entire* contract . . . [by] seeking judicial aid in having the other party *perform*" the contract's essential purpose of selling the real estate. (Emphasis in original.) We disagree. "Enforcement" of a contract includes a recovery of damages for any breach, whether total or partial. Restatement (Second) of Contracts §§ 345(b), 346 comment (a) (1981).

Thus, we must decide whether Soden's *defective* performance of the construction provisions of its contract was a "[default] in the performance of this contract." We look first to the dictionary definition of "default" because "[w]ords used by the parties are to be given their usual, ordinary and popular meaning, unless it can be

clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it." *Ames* v. *American Nat'l Bank of Portsmouth*, 163 Va. 1, 39, 176 S.E. 204, 217 (1934); *see also Winn* v. *Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194-95 (1984).

■ The noun "default" is defined as a "failure to do something required by duty or law." Webster's Third New International Dictionary 590 (1986). And, a building contractor has the implied contractual duty to build a house in a workmanlike manner. *Mann* v. *Clowser*, 190 Va. 887, 901, 59 S.E.2d 78, 84 (1950). Thus, the building contractor defaults in the performance of his contract if he furnishes defective materials or workmanship, as Soden did.

■ A "breach of contract" is defined as a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract." Black's Law Dictionary 188 (6th ed. 1990). Hence, ordinarily, a builder's breach in the performance of his contract, *i.e.*, a *defective* performance, also would be a "default" in that contract.

Next, we decide whether Soden has sustained his burden of showing that the dictionary definition of "default" should not be applied in this case. Soden argues that in this contract "[t]he term 'default' clearly contemplates something more than a missed date. The strong penalties . . . indicate that a default was something that the parties considered to be fairly grievous."

■ Here, however, Soden's default was not limited to his 61-day delay in completing the house. Of Clevert's damage award, $17,868 was for Soden's defective workmanship and materials. Moreover, the total damage award was more than 10% of the contract price for the house and lot. Therefore, we regard Soden's default as "fairly grievous" and a material breach of the contract.

Alternatively, Soden claims that the *"essential purpose* of the contract [was the sale of the real estate], and default would be the total failure of that essential purpose." (Emphasis in original.) Soden's premise is flawed for the following reasons.

First, Soden overlooks the fact that the lot was unimproved when the contract was signed and its apparent approximate value was $25,000, about 15% of the contract price. Soden's construction obligation, set forth with some particularity in the contract, added about $140,000 to the value of the original contract. Obviously, Soden's defective performance of that construction obliga-

tion had a material impact upon an "essential purpose" of the contract.

Second, the contract specifically rebuts Soden's hypothesis that unless we adopt its interpretation of "default," Clevert's $10,000 deposit would have been forfeited to the real estate agent should Clevert "fail in some collateral duty to the actual closing." The contract expressly limits the forfeiture to "the commission to which the agent *would have been entitled if the contract had been performed.*" (Emphasis added.) Assuming that the sale actually was closed despite a "collateral" breach by Clevert, the agent would have been entitled to no further commission because that portion of the contract giving rise to the agent's commission "had been performed."

In sum, Soden's defective performance of its construction obligation gave rise to litigation "in connection with this transaction," and subjected Soden to liability for Clevert's reasonable attorneys' fees expended in this litigation. Because Soden does not "disagree as to whether the attorney's fees were reasonable," we will reverse the judgment of the trial court and will enter final judgment for Clevert for $16,799.02, the amount of attorneys' fees that the plaintiffs incurred in the trial court. We also will remand the case for further proceedings to adjudicate Clevert's claim for additional attorneys' fees and costs incurred in this appeal.

*Reversed,*
*final judgment,*
*and remanded.*

JUSTICE LACY, dissenting.

Notwithstanding the majority's pronouncement that "default" and "breach" are one and the same, I continue to believe that these terms are well understood and widely accepted to reflect separate concepts. Default embraces a failure to perform, while breach contemplates an imperfect performance.

The contract in issue was one under which Clevert agreed to purchase a house built and sold to them by Soden. That occurred; the contract was performed. The contractual paragraph entitled "DEFAULT" provided that only a "defaulting party" could be

held liable for attorney's fees incurred by a "non-defaulting party."

As stated by the trial court, this litigation

is a breach of contract, suitability of materials suit and workmanlike manner in which the place was built. That is not a default case and the Court finds no evidence of default from this case. The contract has been performed but not to the satisfaction of the plaintiff, of course.

In the Court's view, breach of contract is not default of the contract, and the Court finds from the language that the attorney fees were from default in the contract and they did not extend beyond that.

In my opinion the majority has strained to give the term "default" a gloss which was never contemplated by these litigants when they signed this real estate contract and which is not its "usual, ordinary and popular meaning." *Ames* v. *American Nat'l Bank of Portsmouth*, 163 Va. 1, 39, 176 S.E. 204, 217 (1934). I dissent.