COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Kelsey and Senior Judge Hodges


DAVID L. OWATA

                                                    MEMORANDUM OPINION[*]
v.      Record No. 2927-03-1                             PER CURIAM
                                                         MAY 11, 2004
PASQUALINA H. OWATA


                    FROM THE CIRCUIT COURT OF YORK COUNTY
                            N. Prentis Smiley, Jr., Judge

              (Brian D. Lytle, on brief), for appellant.

              (Lawrence D. Diehl, on brief), for appellee.


        On appeal, David Owata (husband) contends the trial court erred in approving the parties'

separation and property settlement agreement (the agreement) and incorporating it into the final

decree of divorce.  Specifically, he objects to the amount of child support and his obligation to pay

private school tuition pursuant to the agreement.  Husband also contends the trial court erred in

awarding Pasqualina H. Owata (wife) attorney's fees under the agreement.  Upon reviewing the

record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

                                      BACKGROUND

        The parties married in 1985 and had one child, who was born on May 11, 1991.  On

December 6, 2002, husband filed a Bill of Complaint seeking a divorce and asking the trial court

"to strike and void the separation and property settlement agreement entered into."  He also

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

sought an award of attorney's fees and costs. In the bill, husband alleged he signed the property settlement agreement "under duress and it is not a valid, proper and fair agreement."

Wife filed an answer denying husband's allegations of duress and by cross-bill, asked the trial court to approve, ratify and incorporate the agreement into a final divorce decree. Wife also requested she "be awarded attorney's fees and court costs incurred for the prosecution of this cause."

On August 29, 2003, the trial court conducted a hearing on husband's challenge to the validity of the property settlement agreement. Husband testified that he and wife separated in the summer of 2000 in anticipation of divorce. At that time, they retained attorneys and initiated divorce proceedings. They partially completed an agreement, but reconciled a few weeks before their first court appearance.

In October 2001, the parties again separated. Husband testified that he and wife decided they "want[ed] to do an undisputed, uncontested divorce." Husband felt the divorce "could be handled relatively cheaply" if he and wife "came to an agreement on everything," so wife visited Roy Lasris, an attorney, on August 23, 2001, retained him to prepare a draft of a separation agreement, and provided him with information to include in the agreement. Lasris' office contacted wife on August 31, 2001, and advised her that the agreement was ready for her to pick up and review. Wife signed the agreement on September 10, 2001. Lasris faxed a copy to husband on September 13, 2001.

Husband testified that he contacted the attorney he retained during the first separation, but she could not meet with him until mid-October 2001, and she "required the same retainer up front," which husband did not have available at that time. He also contacted the JAG Office at the base where he works, but no one from that office could see him until mid-October. Husband explained, "That's when my wife started to call me and insist that I go sign it immediately

- 2 -

because she was attempting to close on a town house and I'm assuming she needed documentation showing she was going to have additional income to which she already had [sic] to be able to afford financing for it." Husband related another telephone call from wife around September 24, 2001, in which she told him "if [he] did not sign the agreement as it was written, that she was going to go for a full contested divorce."

Husband related that he and wife agreed in 1997 to have their daughter attend private school. The child had attended the school continuously since 1997. Husband signed the agreement on September 27, 2001, without discussing it with an attorney. He admitted during questioning by the trial court that he consulted the presumptive child support guidelines when arriving at the child support formula. The parties attached a copy of the child support guidelines with a draft divorce decree.

Lasris testified that wife requested that a certain amount and formula for child support be applied. Lasris explained that when a party specifically requests a certain amount and/or formula, his office does not object, "so long as it appears to be in a relatively reasonable range." According to Lasris, the amount in the agreement "certainly seem[ed] reasonable under the circumstances."

The trial court found that husband "was familiar with and had consulted attorneys relative to guideline support," that the "formulation of his [military] retirement pay [for child support] was very close to the guideline support amount under the Virginia Child Support Guidelines" and that "they agreed to a little more under the formulation." It then ruled that the agreement had not been procured by duress and that it was not unfair. The trial court "confirm[ed] the agreement relative to the child support as the departure from the guideline amount by the written agreement of the parties." As to private school tuition, the trial court noted that the parties' child had been enrolled in private school "long before they did that property settlement agreement."

Husband, "by his signature on the property settlement agreement said, I'll pay for it and therefore the Court confirms that portion of the agreement as a separate contract and the Court does not interfere with the separate contract of the adult parties made at arm's length without duress." The trial court incorporated the agreement in its final decree of divorce.

Finally, the trial court awarded attorney's fees "as the contract calls for, [namely,] the attorney's fees directly attended [sic] to the contest of the property settlement agreement. Mrs. Owata won and Mr. Owata lost and he's agreed to pay her fees [pursuant] to that agreement."

THE AGREEMENT

Husband's arguments relate to the following sections contained in the agreement:

CHILD SUPPORT

Husband shall pay to Wife one-half (1/2) of his net "take-home" military pay per month for the support, maintenance and education of the said child born of the marriage. This one-half shall be calculated <u>after</u> Wife's share of military retirement pay has been deducted from the gross amount (so that the net effect is that Husband will be paying approximately 1/3 of his retirement pay as child support).

Child support shall commence on the first day of the month next following the date of this agreement, and shall continue on the first day of each succeeding month thereafter until the child reaches an EMANCIPATION EVENT as defined in the paragraph so entitled.

While [the child] is completing her primary and secondary level education, Husband shall also pay the cost of her private school tuition.

ENFORCEMENT

If one party defaults in fulfilling an obligation in the agreement and if the other party initiates litigation for the enforcement of any of the provisions of this agreement, and if a party's position is substantially sustained by a court of competent jurisdiction, or a settlement is reached substantially sustaining that party's position, the other will be responsible for and will pay forthwith any and all expenses incurred in the pursuit of such enforcement, or defense of the claim, including but not limited to legal fees, court costs, investigator's fees, and travel.

- 4 -

Additionally, in a paragraph section labeled "SUBSEQUENT DIVORCE" the parties agreed that, in the event either party institutes a suit for divorce, "this Agreement shall be submitted to the court for its approval, ratification and incorporation in any such decree by the court." The paragraph concludes, "and the parties hereto may enforce the terms of this Agreement by virtue of the decree or in any manner independent of said decree."

### ISSUE I:  CHILD SUPPORT

In his first Question Presented, husband asks:

> Where the parties' agreement provides for child support to be paid in a[n] indeterminate, formulaic manner that might change on a month-to-month basis, did the Court err by denying [husband's] request to have that provision either stricken and or child support re-determined because of a change in circumstances?

In his brief, husband presents several arguments as to why the child support portion of the agreement is allegedly void:  (A) he can no longer afford to pay both the child support and tuition; (B) the trial court failed to state a reason for deviating from the presumptive guidelines amount; and (C) the provision "does not meet any definition or requirement of clarity and specificity . . . [and it] would have child support changing month-to-month depending on pay, taxes, exemptions, disability, etc. (and private school tuition)." At trial, husband argued, *inter alia*, that he signed the agreement under duress and it was unfair and unconscionable; however, he does not raise the legal duress or unconscionability arguments on appeal.  Thus, we address only those issues he raises in his brief.

### (A)  Husband Can No Longer Afford to Pay

Husband contends in his brief that he "was prevented from testifying as to any other [sic] the change in circumstances regarding private school tuition." At trial, the following exchange took place during husband's testimony:

> Q. [By Husband's attorney]:  In terms of the Judge looking at the situation as it existed with respect to [the child], would you agree,

- 5 -

> you and your wife agreed while you were together to put her in private school and then you agreed to pay that tuition in the agreement. What has changed since that?
>
> MS. SHORT [Wife's attorney]: Your Honor, I'm going to object. I don't believe that's relevant.
>
> THE COURT: Sustained.

Husband did not contest the trial court's ruling, nor did he proffer what evidence he would have provided regarding "[w]hat has changed since" he agreed to pay the contracted child support and tuition.

> When evidence is excluded by the court the aggrieved party must make a proper proffer of the excluded testimony to preserve the ruling for appellate review. The proffer may consist of a unilateral representation of counsel, if unchallenged, or a mutual stipulation of the proffered testimony. Absent such representation of counsel, or stipulation, the ruling will not be considered on appeal. There was no proffer in this case.

Klein v. Klein, 11 Va. App. 155, 160, 396 S.E.2d 866, 869 (1990).

Husband neither presented nor proffered any evidence demonstrating that he could no longer afford to pay the support and tuition. Moreover, he failed to put forth any evidence as to what factors or circumstances had changed since he signed the agreement precluding him from being able to afford that which he agreed to pay. Accordingly, we find no reversible error on this sub-issue.

(B) Trial Court Failed to State a Reason for Deviating From the Presumptive Amount

Appellant indicates in his brief that he preserved this issue on pages 16, 66 and 67 of the Joint Appendix. Our review of those pages and the objections written on the final decree fail to show that husband raised this argument below.

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal.

- 6 -

Moreover, because the trial court heard evidence, carefully reviewed the agreement and compared the agreed support payment amount with the presumptive guidelines amount and found it reasonable, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

(C) <u>The Child Support Provision Is Not Specific and Clear and<br>Might Change From Month to Month</u>

In his brief, husband argues:

> Lastly, the [Child Support] provision set forth above does not meet any definition or requirement of clarity and specificity as contemplated by <u>Shoup v. Shoup</u>, 37 Va. App. 240, 248 S.E.2d 783 (2001)[(*en banc*),] and <u>Kelley v. Kelley</u>, 248 Va. 295, 449 S.E.2d 55 (1994)[,] as it would have child support changing month-to-month depending on pay, taxes, exemptions, disability, etc. (and private school tuition). Clearly <u>Kelley</u> and <u>Shoup</u> hold an agreement of the parties cannot bind the court's hands regarding child support. So, when can a court review an agreement of the parties in order to determine whether it is inconsistent with the mandates of the code and the best interests of the child? Logically, that should be when there has been a request coupled with a change in circumstances. The court denied Husband that opportunity and erred.

Husband testified that when he and wife "came up with those [child support] figure[s], . . . they followed the [state] guidelines what she was due legally from my retirement and . . . the table of child support followed suit." He and wife also consulted the military's guidelines regarding retirement benefits to a spouse and child support payments when he and wife "came up with the agreement." Under the formula, husband pays one-third of his monthly retirement pay in child support. In the final decree, the monthly child support payment is listed as $593.50, and the statutory presumptive guidelines amount is listed as $456.12.

On pages 15 and 16 of the Joint Appendix, husband's attorney argued:

> Judge, the principal focus that is under the terms of this property settlement [sic], under child support, the agreement which was executed almost two years ago, provides, and he's retired military, that she gets one third of that and then the child gets one

- 7 -

half of the balance that's left, and then it goes on in the same paragraph to provide that he's to pay for private school tuition.

It's our position that that formulated child support calculation is not valid. I think the courts have routinely struck every one that comes across in a court of appeals that says its automatic, it's an increase without some sort of reference to the child support guidelines so that that makes that part of the agreement invalid. We've done child support guidelines and we will submit those to you, and it shows the difference between that formulated approach and the guideline approach of roughly a hundred dollars.

The evidence will be the child support tuition on top of that is $380 a month, so the net effect is my client is paying twice as much child support as is required and we're going to ask the Court not to approve that and to simply set it at the presumptive child support guidelines, and that's really the focus of the case, Judge, and our contesting the validity of the agreement.

Pages 66 and 67 of the Joint Appendix do not contain any arguments relating to the clarity or specificity of the formula used in the agreement or that support is subject to change in the future based on contingent factors. On the decree, husband objected in writing "for the reasons stated on the record and espoused in Shoup v. Shoup, 37 Va. App. 240 (2001) (error to deny change in circumstance, agreement is two years old and no finding agreement is in the best interest of the child or to rebut presumptive support)."

When awarding child support and presented with a provision for child support in an agreement a trial court need not award child support in the statutorily presumptive amount if a deviation from such an amount is justified. However, it must determine the guideline amount and then may compare this amount with the provisions of the separation agreement. If the factors described in Code §§ 20-107.2 and 20-108.1 justify an award based upon the provisions of the separation agreement instead of the statutorily presumptive amount, it may then enter an award in the amount provided for in the separation agreement and it may do so by affirming, ratifying, and incorporating the separation agreement, in whole or in part, pursuant to Code § 20-109.1.

Scott v. Scott, 12 Va. App. 1245, 1249, 408 S.E.2d 579, 582 (1991).

It is well established that "marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law." Cooley v. Cooley, 220 Va.

- 8 -

749, 752, 263 S.E.2d 49, 52 (1980). Such "agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997) (citing Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986)). "When the parties have entered into a valid agreement, the trial court may incorporate that agreement by reference into its final decree of divorce." Pelfrey v. Pelfrey, 25 Va. App. 239, 244, 487 S.E.2d 281, 283-84 (1997) (citing Code § 20-109.1; Drewry v. Drewry, 8 Va. App. 460, 466, 383 S.E.2d 12, 14 (1989)).

Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal. See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (*en banc*). A trial court must be alerted to the precise issue to which a party objects. See Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 525 (1992). Husband failed to specify with any particularity the argument regarding the formula used in the agreement, namely, how and why the formula was improper or changed from month-to-month. The cases cited by husband in support, Shoup and Kelley, do not stand for the proposition husband argued. In Shoup, we discussed the "three limitations upon the parties' right to contract regarding child support," none of which relate to the argument regarding the formula or month-to-month changes. Shoup, 37 Va. App. at 250-51, 556 S.E.2d at 788 (holding that: (1) trial court must review provisions for consistency with best interests of child; (2) parties may not prevent court from exercising its power to change, modify or enforce maintenance of child; and (3) parties may not terminate by contract a parent's duty to support a child). In Shoup, we reversed the trial court for holding the father in contempt for unilaterally reducing the amount of child support when each child turned eighteen, pursuant to a clause in the separation agreement. In upholding the agreement, we explained, "under certain circumstances,

- 9 -

the right to reach agreement regarding support is more extensive than the court's power to decree support absent an agreement." Id. at 251, 556 S.E.2d at 788.

In Kelley, the Supreme Court held as void a clause in the property settlement agreement which provided: "'in consideration of Husband relinquishing all of his equity in the jointly-owned marital home, . . . Husband shall never be responsible for payment of child support.'" Kelley, 248 Va. at 296-97, 449 S.E.2d at 55.

Not only do the cases not appear related to husband's argument, husband did not meet the requirements of Rule 5A:18. Therefore, we will not consider this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

### ISSUE II: PRIVATE SCHOOL TUITION

Husband asks:

> Where there is an obligation to pay the costs of private school tuition for the child in the same context that child support is provided, did the Court err in denying for that obligation to be considered with the child support guidelines and the change in circumstances?

In its holding, the trial court explained:

> The Court finds that it has allowed the parties and counsel to go outside the four corners of the written property settlement agreement taking parol evidence, inquiring into what was in the mind of Mr. Owata in his testimony. . . . [T]hrough questions from counsel and the Court, the Court has determined number one, that Mr. Owata was familiar with and had consulted attorneys relative to guideline support, and I believe his testimony was the amount that he agreed to from the formulation of his retirement pay was very close to the guideline support amount under the Virginia Child Support Guidelines or close to, and I think he suggested it was around $500 and they agreed to a little more under the formulation.

Because the evidence showed the parties were familiar with and had considered the presumptive child support guidelines amount, the trial court "confirm[ed] the agreement relative

- 10 -

to the child support as the departure from the guideline amount by the written agreement of the parties."

Husband contends in his brief that he "was prevented from testifying as to a change in circumstances." However, as noted in the discussion of Issue I(A), *supra*, husband did not contest the trial court's ruling, nor did he proffer what evidence he would have provided regarding "[w]hat has changed since" he agreed to pay the contracted child support and tuition.

As to the tuition, the trial court noted that the child's "history of private education existed long before they did that property settlement agreement." For several years, the private tuition was paid, even while the parties were separated. Moreover, the child had enrolled and begun the 2001-2002 school year at the time father signed the agreement. The trial court held that "Mr. Owata, by his signature on the property settlement agreement said, I'll pay for it and therefore the Court confirms that portion of the agreement as a separate contract and the Court does not interfere with the separate contract of the adult parties made at arm's length without duress." The trial court found

> [t]hat the agreement is a proper agreement that is valid and is a fair agreement negotiated by the parties. This negotiation had taken place not over a period of two or three weeks as Mr. Lasris suggested, but as Mr. Owata suggests, over a period of months[,] maybe years[,] because of prior separations, so there was a lot of time for all of them to think about it. He had two weeks to think about it apparently after he'd gotten the faxed agreement, and that was certainly not instantaneous on his part, so the Court confirms the agreement.

"Where [a separation] agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself." Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994). "'Courts cannot relieve one of the consequences of a contract merely because it was unwise' . . . [or] 'rewrite a contract simply because the contract may appear to

reach an unfair result.'" Rogers v. Yourshaw, 18 Va. App. 816, 823, 448 S.E.2d 884, 888 (1994) (citations omitted).

The language of the contract was clear. In addition to child support, husband agreed that he "shall *also* pay the cost of [the child's] private school tuition." (Emphasis added.) Thus, the evidence supported the trial court's conclusion that husband separately agreed to pay the tuition in addition to child support.

### ISSUE III: ATTORNEY'S FEES

Husband contends he "did not default in fulfilling an obligation under the Agreement[, t]herefore there was no basis to award attorney's fees under the Agreement."

The trial court noted that "Mrs. Owata won and Mr. Owata lost and he's agreed to pay her fees [pursuant] to that agreement." Accordingly, the trial court ordered husband to pay only those attorney's fees directly related "to the contest of the property settlement agreement." Husband's written objection on the final decree asserted that "the agreement only awards or allows attorney's fees in the event a party defaults, which was not the case here."

"The noun 'default' is defined as a 'failure to do something required by duty or law.'" Clevert v. Soden, Inc., 241 Va. 108, 111, 400 S.E.2d 181, 183 (1991) (quoting Webster's Third New International Dictionary 590 (1986)) (holding that breach in performing contract would be default). The agreement contained provisions averring that: (a) the parties were aware of their legal rights; (b) they signed the agreement "freely, voluntarily and without coercion or compulsion"; and (c) "each of them has executed this agreement of his or her own volition, free from any persuasion, influence, duress or fraud on the part of the other, . . . it being the desire of Husband and Wife that their respective rights in each other's property and estate accruing by operation of law shall be determined and fixed by this Agreement." Moreover, the agreement

- 12 -

contains a provision requiring that in the event either party institutes a divorce proceeding, "this Agreement shall be submitted to the court for its approval."

Despite affixing his signature to the agreement which contained the above-mentioned representations, husband alleged in his bill of complaint that he signed the agreement "under duress and it is not a valid, proper and fair agreement." Thus, he attempted to have the contractual support and tuition provisions voided, thereby requiring wife to obtain legal assistance and initiate litigation for enforcement of the contractual provisions. Therefore, the trial court did not err in finding husband in default in fulfilling his obligations pursuant to the agreement and in awarding attorney's fees.

Wife asks for an award of attorney's fees incurred by her on appeal. Upon consideration of the entire record in this case, we hold that she is entitled to a reasonable amount of attorney's fees. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Accordingly, we remand the matter to the trial court for it to determine the proper amount of the award.

For these reasons, the decision of the trial judge is affirmed.

Affirmed and remanded.