COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Raphael and Senior Judge Annunziata
Argued at Fairfax, Virginia

SAAD BENKIRANE

                                                    OPINION BY
v.        Record No. 1100-24-4          JUDGE DANIEL E. ORTIZ
                                                    JULY 29, 2025

CITY CONCRETE CORP.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge

Rachel L. Yates (Law Office of Rachel Yates, PLLC, on briefs), for
appellant.

Richard G. Cole, III (James R. Hart; Edward W. Cameron;
Armstrong Teasdale LLP; Hart & Horan, P.C.; Cameron/McEvoy
PLLC, on brief), for appellee.


Saad Benkirane brought a claim against City Concrete Corp. ("City Concrete") alleging

violations of the Virginia Consumer Protection Act ("VCPA"), Code §§ 59.1-196 to -207, breach

of contract, and fraud in the inducement.  The trial court sustained City Concrete's demurrer as

to the VCPA claim.  City Concrete also counterclaimed alleging breach of contract.  Following

trial, City Concrete prevailed before a jury on all counts.  On appeal, Benkirane challenges the

trial court's sustaining City Concrete's demurrer and the court's refusal to grant two of his

proposed jury instructions.  Because we find that the VCPA did not apply to this transaction and

that the trial court did not otherwise err in refusing Benkirane's proposed instructions, we affirm.

BACKGROUND

City Concrete is a contractor specializing in commercial and residential concrete

construction, including associated tasks like demolition and excavation.  City Concrete obtained

a Class A contractor's license from the Virginia Department of Professional and Occupational

Regulation's ("DPOR") Board for Contractors ("Board") in 2009. City Concrete subsequently renewed its license several times. Under Code § 54.1-1106(A) and (E), a contractor must have a "designated employee" who has "successfully complete[d] [an] examination and . . . meets or exceeds the other entry criteria established by Board regulations." The statute provides that the contractor's license "shall permit the applicant to engage in contracting only so long as the designated employee is in the fulltime employment of the contractor or is a member of the contractor's responsible management." Implementing the statutory requirement, the Virginia Administrative Code requires that a Class A licensed contractor maintain a "designated employee" who, among other requirements, is "a full-time employee . . . or is a member of the responsible management of the firm." 18 VAC 50-22-60(B)(2). The contractor must also maintain, "[f]or every classification or specialty in which the firm seeks to be licensed," a "qualified individual" who, in addition to other qualifications, "[i]s a full-time employee of the firm . . . or is a member of the firm . . . or is a member of the responsible management of the firm." 18 VAC 50-22-60(C)(3).

City Concrete named Eric Clark as its designated employee and qualified individual on file with DPOR in 2009. Clark transitioned to part-time status with City Concrete as an independent contractor in 2013 and left the company altogether in 2022. But, until at least late 2023, he remained listed as City Concrete's designated employee and qualified individual on file with DPOR.[1] Harold Shrewsberry joined City Concrete in 2012, becoming its general manager in 2014. James DeSantis, a City Concrete vice president, was in charge of DPOR matters when Shrewsberry joined the company. Shrewsberry assumed responsibility for DPOR matters when DeSantis left, but he was aware of neither the identity of City Concrete's "designated employee"

---

[1] The parties and the trial court used the terms "designated employee" and "qualified individual" interchangeably, and the distinction is not relevant to our analysis.

nor the requirement to update that designation with DPOR as personnel assignments changed within the company. Shrewsberry became aware of the requirement to appoint a new designated employee only after receiving a DPOR complaint in connection with the events described below.

The subsequent DPOR investigation revealed that Clark was designated as City Concrete's qualified individual in October 2009 but had transitioned to a part-time role in 2013 and left City Concrete altogether in 2022. The investigation further revealed that, despite his change in status and subsequent departure from the company, Clark remained listed as City Concrete's qualified individual until at least October 2023; City Concrete had failed to appoint a new qualified individual and designated employee and report the change to DPOR as required by the Administrative Code. As a result of this investigation, City Concrete entered into a consent order with DPOR in December 2023. Under the terms of this order, City Concrete agreed to pay $3,450 in penalties and $150 in costs, to "report a change to the qualified individual to the Board within . . . [180] days of . . . the order," and to "have a member of Responsible Management successfully complete a Board-approved remedial education class."

The events giving rise to this action began in 2017, when Saad Benkirane made plans to demolish the structure on a previously acquired lot and erect a new dwelling in its place. He searched for licensed contractors on the DPOR website, found City Concrete, and made contact. City Concrete sent him draft contracts for review, and City Concrete's owner and president Jorge Neiva met Benkirane at Benkirane's office. At that meeting, Neiva conveyed to Benkirane that "City Concrete was permitted to engage in concrete contracting in Virginia."

City Concrete and Benkirane subsequently executed two agreements. One provided for City Concrete to demolish the existing structure and install a silt fence and construction entrance on the site. The other required City Concrete to pour concrete for slabs, footings, planter boxes, walls, stairs, and stoops for a dwelling and detached garage on the site; provide waterproofing

- 3 -

and termite treatment; and install exterior drain tile. Benkirane signed these agreements as the "Authorized Rep." for the "General Contractor/Builder," which the agreements named as "GW Real Estate Enterprise" ("GWRE").

City Concrete began work on the project in April 2017 and ceased work in December of that year, having received $22,300 in payments for work performed and leaving a balance due of $50,060. Benkirane initiated the present litigation in December 2022, following the nonsuit of prior litigation between the parties. In his complaint, Benkirane alleged three counts and attached the above-mentioned agreements. First, he alleged that City Concrete violated the VCPA, and, specifically: that the agreements "state[d] that the project [wa]s for 'Sam Benkirane [r]esidence,'" that City Concrete "misrepresented the timeframe" for the work and "that it would provide turnkey services to Benkirane," that City Concrete "misrepresented the materials that it would use," that it "misrepresented that it had a valid contractor's license issued by DPOR," and that City Concrete "accepted money and/or invoiced Benkirane for [w]ork not completed and without ever intending to complete the [w]ork." Second, he alleged breach of contract, asserting that City Concrete "fail[ed] to complete the work . . . in a workmanlike and quality manner and fail[ed] to use the material it represented in the [a]greements it would use." And, finally, Benkirane charged fraud in the inducement, alleging inter alia that City Concrete and Neiva "made false representations of material fact . . . that . . . City [Concrete] . . . had the necessary qualifications required by DPOR to . . . work on the property in the Commonwealth of Virginia." In his view "City [Concrete] did not possess the appropriate license under Virginia law because its [q]ualified [i]ndividual was a part-time marketing representative with no construction supervision duties of any manner." City Concrete filed a counterclaim setting forth two counts for breach of contract based on Benkirane's nonpayment for work completed under the agreements.

City Concrete demurred to counts I and III of Benkirane's complaint, which the trial court sustained with leave to refile. Benkirane then filed an amended complaint, reciting the same counts as set forth in his original complaint. City Concrete again demurred as to counts I and III, arguing in pertinent part that "Benkirane still fail[ed] to allege facts establishing a consumer transaction" because the party in interest in the contracts was "GW Real Estate Enterprise," not Benkirane. The trial court again sustained City Concrete's demurrer, this time without leave to amend. Benkirane filed a motion to reconsider the trial court's ruling, arguing in part that "the work was performed on [his] personal residence, satisfying the VCPA's broad definition which includes transactions for goods or services for 'personal, family, or household purposes'" and that he had "adequately pleaded the elements of fraud."

In an opinion letter and order, the trial court denied Benkirane's motion to reconsider as to his VCPA claim but granted it as to his fraud in the inducement claim.[2] *See Benkirane v. City Concrete Corp.*, 112 Va. Cir. 351 (Fairfax 2023). As to Benkirane's VCPA claim, the trial court found that the parties to the agreements were City Concrete and GWRE and that Benkirane was merely the authorized representative of GWRE. *Id.* at 353. The trial court observed that, under Code § 59.1-198, a "'[c]onsumer transaction' means: '1. The . . . sale . . . of goods or services to be used primarily for personal, family or household purposes . . . .'" *Id.* at 352 (alterations in original). But, "as an [e]nterprise," the court continued, GWRE "would not engage in personal, family or household activities. Rather, those goods and services" provided under the agreements "were to be used for a commercial purpose, *i.e.*, the construction of a residential building by [GWRE]." *Id.* Under the plain language of Code § 59.1-198, the trial court concluded, "the contracts between [GWRE] and [City Concrete] were not '[c]onsumer transactions.'" *Id.* at 353.

---

[2] Judge Oblon presided at trial, but Judge Richard E. Gardiner drafted this opinion letter and entered the accompanying order, as well as the order partially denying Benkirane's motion to reconsider.

The case proceeded to a jury trial on Benkirane's remaining counts and on both counts of City Concrete's counterclaim. As relevant to this appeal, the trial court refused two of Benkirane's proposed jury instructions—Plaintiff's Jury Instructions 10 and 15. Proposed Jury Instruction No. 10 stated, "If City Concrete Corp.'s contracts with Benkirane were for contracting by City Concrete Corp. in violation of Virginia law, City Concrete Corp. is prohibited from claiming any amount due under the contract." Benkirane argued that this instruction was appropriate because, in his view, it was "[s]upported by the evidence . . . that there [was] illegality in the performance of contracting work by City Concrete," referring to City Concrete's failure to update its designated individual. City Concrete objected that Benkirane had not pleaded the legal basis for this instruction and further argued that the instruction did not correctly state Virginia law insofar as it failed to disclose the existence of a safe harbor set forth in Code § 54.1-1115(C). The trial court refused the instruction, and Benkirane did not proffer an alternative. Benkirane's proposed Instruction No. 15 stated, "If you find that City Concrete furnished defective materials or workmanship, you shall find that City Concrete breached its contract with Benkirane." City Concrete objected that the instruction was duplicative of other accepted jury instructions, while Benkirane argued that it was necessary because no other instruction "directly addresse[d] defects in materials and workmanship." The trial court refused the instruction on the ground that it was "subsumed in the breach of contract instruction" that the jury was already being given.

At trial, City Concrete presented testimony and evidence describing the amount and quality of the work completed under the contract and how Benkirane failed to pay $50,060 due on the work. City Concrete also adduced evidence that it was unaware of the requirement to update its qualified person and designated individual and that its failure to do so was unknowing and had no impact on Benkirane's project. Benkirane provided testimony alleging that City

Concrete had not completed the work, that there had been problems with materials and workmanship, and that City Concrete had deceived him about its licensure status. The jury found in favor of City Concrete on all counts, denying Benkirane any relief and awarding City Concrete $50,060 on its counterclaims. The trial court entered a final order to this effect on May 31, 2024.

Benkirane filed a "Motion to Set Aside Verdict or Award a New Trial Regarding Counterclaim," asserting that the trial court erred in refusing his proposed Instruction No. 10. The trial court denied this motion, finding, in pertinent part, that the proposed instruction "misstate[d] the law" by failing to address the safe harbor provision noted above and, in the alternative, that "any instruction error was obviously harmless" because another instruction informed the jury that "a contractor must have a proper 'designated employee.'" The court found that, notwithstanding this requirement, the jury's verdict was rational because it could have determined that "(1) [City Concrete] gave substantial performance, and (2) [it] proved it was unaware its designated 'designated employee' was improper."

Benkirane timely appealed.

ANALYSIS

On appeal, Benkirane raises three assignments of error. He asserts: that the trial court erred in sustaining City Concrete's demurrer and in denying his request to reconsider the same, that the trial court erred in refusing his proposed Jury Instruction No. 10 and in denying his motion to set aside the verdict, and that the trial court erred in refusing his proposed Jury Instruction No. 15. We address each in turn.

I. The trial court did not err in sustaining City Concrete's demurrer as to the VCPA claim.

Below, City Concrete demurred to Benkirane's VCPA claim on the ground "that the transaction at issue is not encompassed by the VCPA because the transaction was a commercial

transaction, not a 'consumer transaction' within the meaning of the VCPA." *Benkirane*, 112 Va. Cir. at 351. Benkirane countered that "the VCPA 'does not require the consumer to directly contract with the supplier, so long as the work was for personal, residential purposes.'" *Id.* at 353. The trial court sided with City Concrete, sustaining its demurrer and partially denying Benkirane's motion to reconsider. *Id.*

"The purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204 (2007) (quoting *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 712 (2006)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Id.* (quoting *Glazebrook v. Bd. of Supervisors*, 266 Va. 550, 554 (2003)). "Because the decision whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo." *Id.* (quoting *Dreher v. Budget Rent-A-Car Sys.*, 272 Va. 390, 395 (2006)). And "we accept as true all properly pled facts and all inferences fairly drawn from those facts." *Id.*

"The VCPA was enacted with 'the intent of the General Assembly that [it] shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public.'" *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 361 (2010) (alteration in original) (quoting Code § 59.1-197). The Act prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," including "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Code § 59.1-200(A)(14). It defines "consumer transaction," in relevant part, as "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Code § 59.1-198.

Benkirane asserts that he "properly pled his claims under the VCPA." He alleges that the agreements list his "company (GW Real Estate Enterprise) as builder . . . due to an email address he

used" in communicating with City Concrete, which City Concrete mistook as the contracting entity. He argues that he "pled that the 'permits and plans provided to City Concrete listed Mr. Benkirane personally as the permit holder' and were applied for 'in his own name as the owner of the Project' rather than as a commercial contractor." Benkirane further argues that his amended complaint "alleged that when he met with [City Concrete]'s owner to discuss the proposal, they were both aware that the project was for [Benkirane]'s 'personal use' and not for a 'commercial venture.'" Benkirane both misunderstands the requirements of the VCPA and misinterprets the nature of this transaction.

First, although "we accept as true all properly pled facts and all inferences fairly drawn from those facts," *Augusta Mut. Ins. Co.*, 274 Va. at 204, we may "disregard[]" any "factual allegations contradicted by the terms of authentic, unambiguous documents that are a part of the pleading," *Smith v. Chesterfield Meadows Shopping Ctr. Assocs., L.P.*, 259 Va. 82, 85 (2000). Benkirane attached both agreements as exhibits to his amended complaint. As the trial court observed, both agreements "identify the '[b]uilder' as 'GW Real Estate Enterprise,'" and describe City Concrete as a "[s]ubcontractor." *Benkirane*, 112 Va. Cir. at 351. Further down, after a "paragraph entitled 'Acceptance of Proposal' . . . there is a line for '[a]ccepted: [s]ignature'" containing Benkirane's signature, "followed by a line for 'Title' on which is typed '[a]uthorized [r]ep.'" *Id.* at 351-52. By their own terms, these provisions show that City Concrete contracted with GWRE—with Benkirane as GWRE's agent—and plainly contradict any inference to the contrary drawn from Benkirane's pleadings. As "often stated, 'the parties' contract becomes the law of the case unless it is repugnant to some rule of law or public policy." *Rash v. Hilb, Rogal & Hamilton Co.*, 251 Va. 281, 285 (1996) (quoting *Winn v. Aleda Const. Co.*, 227 Va. 304, 307 (1984)). Additionally, "we 'must give effect to the intention of the parties as expressed in the language of their contract, and the rights of the parties must be determined accordingly.'" *Id.* at 286 (quoting *Foti v. Cook*, 220 Va. 800, 805

(1980)).  Here, the parties structured their agreement as one between two commercial entities, and we decline to upset that intention.

In that vein, we are also unpersuaded by Benkirane's argument that the agreements were in GWRE's name because of a misunderstanding by City Concrete.  This argument derives from Benkirane's allegation in the amended complaint that, "[u]pon information and belief, Ms. Loretta Kilby, an administrative employee of City Concrete, drafted Agreement I and addressed it to GW Real Estate Enterprise due to an email address used by Mr. Benkirane to communicate with City [Concrete]."  As an initial matter, this allegation made "[u]pon information and belief" is speculative.  *Cf. Walsh v. Walsh*, 177 Va. 174, 190 (1941) ("[T]his is not an allegation of fact.  It is an allegation based on information and belief and is not to be taken as true on a hearing on the bill and answer.").  But, even if we accepted it, we give "no weight" to inferences drawn from the facts pleaded in the complaint "to the extent that they are unreasonable," which is to say, to the extent "the inferences are strained, forced, or contrary to reason."  *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)).  In his complaint, Benkirane twice held himself out as someone with "professional experience in real estate"; it would be unreasonable to infer that Benkirane expressly affirmed in writing that GWRE was the contracting party—simultaneously naming himself as the "[a]uthorized [r]ep."—without intending it to be so.

Finally, Benkirane argues that, even if the agreements were between two commercial parties, they still fit within the VCPA's definition of "consumer transaction."  In his estimation, because the agreements between GWRE and City Concrete would ultimately result in the construction of Benkirane's personal residence, they were services "*to be used* for personal, family, and household purposes."  Code § 59.1-198 (emphasis added).  We disagree.

- 10 -

"The primary objective of statutory construction is to determine legislative intent. In determining that intent, words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise." *Cox v. Commonwealth*, 73 Va. App. 339, 344 (2021) (quoting *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008)). "In interpreting statutes according to their ordinary meaning, this Court considers them *in pari materia*, meaning [we] will not examine statutes 'as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement.'" *Id.* at 344 (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). With respect to the VCPA, the General Assembly explicitly stated that its intent was "to promote fair and ethical standards of dealings between suppliers and the *consuming* public." Code § 59.1-197 (emphasis added). Further, our rules of construction "discourage any interpretation of a statute that would render any part of it useless, redundant or absurd." *Tanner v. Commonwealth*, 72 Va. App. 86, 101 (2020) (quoting *Spratley v. Commonwealth*, 298 Va. 187, 195-96 (2019)).

Benkirane's interpretation of Code § 59.1-198's "consumer transaction" definition is strained, counter to the legislative purpose, and would lead to an absurd result. Under his logic, any transaction resulting in an end-product that is ultimately used for "personal, family, or household purposes" fits within the definition. But, under the statute, the phrase "to be used" plainly modifies "goods or services"; put differently, the relevant question is whether the bargained-for "*goods or services*" are "to be used" for personal purposes, not whether any eventual end-product to which the goods or services contribute is for personal use. Code § 59.1-198 (emphasis added). This interpretation is consistent with the VCPA's express legislative purpose "to promote fair and ethical

- 11 -

standards of dealings between suppliers and the *consuming* public," rather than dealings between commercial entities throughout the supply chain.[3]  Code § 59.1-197 (emphasis added).

Here, as articulated above, Benkirane chose to structure the agreements as a commercial transaction between a "General Contractor/Builder," GWRE, and a "subcontractor," City Concrete. As the trial court persuasively observed:

> the contracts between [GWRE] and [City Concrete] were not "[c]onsumer transactions" because the goods and services to be used pursuant to those contracts were not to be used "primarily for personal, family or household purposes" of [GWRE] . . . .  Rather, those goods and services were to be used for a *commercial* purpose, i.e., the construction of a residential building by [GWRE].

112 Va. Cir. at 353 (emphasis added).

We agree with the trial court's reasoning,[4] and Benkirane's attempt to expand the scope of the VCPA's "consumer transaction" definition is unavailing.  We accordingly affirm the trial court's judgments sustaining City Concrete's demurrer as to the VCPA claim and partially denying Benkirane's motion to reconsider.

II.  The trial court did not err in refusing Benkirane's proposed Jury Instruction No. 10.

Benkirane's proposed instruction read: "If City Concrete Corp.'s contracts with Benkirane were for contracting by City Concrete Corp. in violation of Virginia law, City Concrete Corp. is prohibited from claiming any amount due under the contract."  Benkirane

---

[3] To illustrate: picture a car manufacturer contracting with a battery manufacturer to supply batteries for its vehicles; under Benkirane's logic, if the ultimate end-product is a vehicle "to be used primarily for personal, family, or household purposes," this contract between two commercial entities would constitute a "consumer transaction"—an absurd result.

[4] In the omitted portion of the above quotation, the trial court implied that a commercial entity could *never* engage in a "consumer transaction" within the meaning of the VCPA, stating that GWRE, "as an Enterprise[,] would not engage in personal, family, or household activities." 112 Va. Cir. at 353.  To the extent the court intended such a categorical exclusion, we decline to endorse that portion of its reasoning.  As our concurring colleague notes, whether the "VCPA provides . . . protection to a natural person who employs a legal entity to engage in a consumer transaction" remains an open question.  *Infra* at 19 (Raphael, J., concurring).

argues that this instruction was supported by the evidence because it is "undisputed that City [Concrete] violated . . . Code § 54.1-1106(E) by engaging in contracting . . . when it did not have a qualifying designated employee."

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "[T]he office of an instruction 'is to fully and fairly inform the jury as to the law of the case applicable to the particular facts, and not to confuse them." *Gaalaas v. Morrison*, 233 Va. 148, 156 (1987) (quoting *Southers v. Price*, 211 Va. 469, 473 (1971)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Pegasystems Inc. v. Appian Corp.*, 81 Va. App. 433, 476 (2024) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). But "[w]hether a proffered jury instruction accurately states the law . . . is reviewed de novo." *Id.* (quoting *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022)).

"It is a well settled principle of law that the courts will not aid a party to enforce an agreement made in furtherance of objects forbidden by the statutes, or by common law, or general policy of law." *Massie v. Dudley*, 173 Va. 42, 52 (1939) (quoting *Levy v. Davis*, 115 Va. 814, 817 (1914)). As relevant here, Code § 54.1-1106(E) provides that a contractor must have a "designated employee" who "is in the fulltime employment of the contractor or is a member of the contractor's responsible management." But, in its order denying Benkirane's motion to set aside the verdict, the trial court found that Instruction No. 10 misstated the law because it failed to account for a safe-harbor provision in the same chapter. Code § 54.1-1115(C) provides,

> [A] construction contract entered into by a person undertaking
> work *without a valid Virginia contractor's license* shall not be
> enforceable by the *unlicensed contractor* undertaking the work
> unless the unlicensed contractor (i) gives substantial performance

- 13 -

> within the terms of the contract in good faith and (ii) did not have actual knowledge that a license or certificate was required by this chapter to perform the work for which he seeks to recover payment.

(Emphases added).  On appeal, Benkirane argues that the "exception to the rule is inapplicable" because City Concrete is not an unlicensed contractor; rather, "City [Concrete] had a license and City Concrete knew it needed to be licensed—it simply did not comply with the mandates that allowed it do work using its license."  We reject Benkirane's argument for two reasons.

First, Benkirane took the position in his amended complaint that "City [Concrete] did *not* possess the appropriate license under Virginia law because its Qualified Individual was a part-time marketing representative."  The trial court agreed when reinstating Benkirane's fraud in the inducement claim on his motion to reconsider, finding that Benkirane's "allegations about Mr. Clark, *i.e.*, that he was City [Concrete]'s 'Designated Employee for purposes of maintaining its DPOR license' and that he 'was not a full-time employee or officer of City [Concrete],' are sufficient, pursuant to Code § 54.1-1106(E), to show that City [Concrete] was *unlicensed*."  *Benkirane*, 112 Va. Cir. at 355 (emphasis added).  The trial court continued, "[W]ith respect to plaintiff's claim for fraud in the inducement based upon the misrepresentation of City [Concrete]'s license status," the amended complaint "sufficiently allege[d] a cause of action."  *Id.* at 356.

"Under settled principles, a litigant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'"  *Commonwealth v. Holman*, 303 Va. 62, 71 (2024) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)).  "The prohibition against approbation and reprobation forces a litigant to elect a particular position, and confines a litigant to the position that []he first adopted."  *Id.* (quoting *Matthews v. Matthews*, 277 Va. 522, 528 (2009)).  Having pleaded the theory that City Concrete's failure to maintain a properly appointed designated

authority constituted contracting without a license, and having acquiesced in the trial court's embrace of that theory to his benefit, Benkirane cannot now object to the court's refusal of proposed Instruction 10 on the ground that City Concrete *is* licensed and therefore barred from seeking shelter in the Code § 54.1-1115(C)'s safe harbor.

In the alternative, the trial court was correct that proposed Instruction 10 misstated the law by failing to account for the presence of the safe harbor. Giving Code § 54.1-1115(C) its plain reading, "unlicensed contractor" and "without a valid . . . contractor's license" are used synonymously. This means that, to the extent City Concrete technically possessed a license but the license was invalid due to its failure to have a proper designated employee, § 54.1-1115(C)'s carve-outs were still applicable. Further, City Concrete adduced evidence showing both that it substantially performed under the agreement before ceasing work due to nonpayment and that it was not actually aware of the designated employee requirement until it "received the DPOR complaint"—i.e., the applicability of the safe harbor was supported by the evidence. Benkirane's proposed instruction, by contrast, would have categorically barred City Concrete from recovery under the contract had the jury found that City Concrete simply failed to comply with § 54.1-1106(E). But, given the evidence supporting the applicability of § 54.1-1115(C)'s exceptions, this categorical exclusion of the safe harbor was a misstatement of the law of the case. Accordingly, the trial court did not abuse its discretion by refusing proposed Instruction 10.[5]

III. The trial court did not err in refusing Benkirane's proposed Instruction No. 15.

Finally, Benkirane asserts that "[t]he trial court erred when it refused Plaintiff's Breach of Contract Instruction #15 where it was a correct statement of the law and supported by the

_____

[5] We further note that Benkirane chose not to proffer an alternative to proposed Instruction 10, which could have instructed on illegality while accurately reflecting the carve-outs of Code § 54.1-1115(C).

evidence." The instruction read, "If you find that City Concrete furnished defective materials or workmanship, you shall find that City Concrete breach [sic] its contract with Benkirane." The trial court reasoned that Benkirane's proposed instruction was "subsumed in the breach of contract instruction that the jury [wa]s already" receiving and that it was not necessary for the instructions to "identify every aspect of the possible breach of contract." We agree with the trial court.

The trial court's breach instruction read, "A material breach of contract occurs if a party fails to do something which he is bound to do according to the contract which is so important and central to the contract that the failure defeats an essential purpose of the contract"—a correct statement of Virginia law. *Cf. Horton v. Horton*, 254 Va. 111, 115 (1997). Benkirane argues that the court nonetheless committed reversible error because his refused instruction was supported by *Clevert v. Jeff W. Soden, Inc.*, 241 Va. 108 (1991), where our Supreme Court observed that "[a] contractor defaults in the performance of his contract if he furnishes defective materials or workmanship." *Id.* at 111. Benkirane is correct that his proposed instruction was an accurate statement of the principle from *Clevert*. *See id.* (equating a builder's "defective performance" to "material breach" (emphasis omitted)). But where "the record discloses that other instructions given by the court adequately covered the substance of [a proposed] instruction . . . it [i]s not error for the trial judge to refuse it." *Howard v. Commonwealth*, 210 Va. 674, 679 (1970). Here, the court instructed the jury to analyze whether City Concrete "fail[ed] to do something" that it was "bound to do" and that was "central to the contract." The jury could certainly have determined from this instruction that any failure to furnish proper materials or workmanship by City Concrete amounted to breach. Thus, where another instruction "adequately covered the substance" of the law of material breach, *id.*, we cannot say that the trial

court abused its discretion in refusing Benkirane's proposed instruction. We accordingly affirm the court's judgment.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

Raphael, J., concurring.

I join the Court's opinion in full but write separately to make clear that we do not reach two important questions under the Virginia Consumer Protection Act that have not been argued here: (1) whether (and to what extent) does the VCPA enable a consumer to use a legal entity to engage in a consumer transaction; and (2) whether a VCPA suit must be brought in the name of the legal entity when the consumer uses that entity to buy consumer goods or services.

Saad Benkirane brought this VCPA suit in his own name against City Concrete Corp. The underlying contract was between City Concrete and "GW Real Estate Enterprise." Benkirane signed the contract as the "Authorized Rep" of GW Real Estate Enterprise. The trial court sustained City Concrete's demurrer, finding that the contract was a "commercial transaction," not a "consumer transaction" governed by the VCPA. *Benkirane v. City Concrete Corp.*, 112 Va. Cir. 351, 351-52 (Fairfax 2023).

Benkirane argues that it does not matter that the contract, by all outward appearances, is a commercial transaction between GW Real Estate Enterprise and City Concrete. *But see CSE, Inc. v. Kibby Welding, LLC*, 77 Va. App. 795, 806 (2023) ("[T]he objective reliability of a contract . . . depends on the 'external manifestation' of the parties' bargained-for exchange, not their "undisclosed mental state." (quoting Restatement (Second) of Contracts § 71 cmt. b (1981))). Benkirane reasons that the VCPA defines "consumer transaction" to mean the sale of goods or services "*to be used* primarily for personal, family or household purposes." Benkirane Br. 22 (quoting Code § 59.1-198). He argues that so long as the contract was for goods or services that were eventually to be used for personal, family, or household purposes, the transaction falls within the plain language of the statute. *Id.* at 22-23.

The Court properly rejects that argument. Accepting it would expand the coverage of the VCPA to include *every* business-to-business transaction within the long supply chain for any

goods ultimately "to be used" by a consumer.[6]  That construction would flout the stated intent of the VCPA to govern transactions "between suppliers and the consuming public."  Code § 59.1-197.

Does that mean that the VCPA provides *no* protection to a natural person who employs a legal entity to engage in a consumer transaction?  Suppose that a married couple transfers title in their personal residence to a revocable trust, as some couples do for estate-planning purposes. Suppose further that the couple, through the trust, buys a washing machine to use in their home. Is that now a commercial transaction, not a consumer transaction?

The VCPA arguably entitles a natural person to the benefits of the VCPA when employing a legal entity to purchase consumer goods or services.  The VCPA defines "person" as "any natural person, corporation, trust, partnership, association and any other legal entity."  Code § 59.1-198.  The VCPA also creates a private right of action to enforce the VCPA for "[a]ny person who suffers loss as the result of a violation of" the VCPA.  Code § 59.1-204.  Yet it is uncertain how the seller can determine that the transaction is for a consumer's "personal, family or household purposes," Code § 59.1-198, and thereby subject to the VCPA, when the contract is structured as a business-to-business transaction between legal entities.[7]

---

[6] *Contra Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 621-22 (E.D. Va. 2013) (holding that VCPA plaintiff could sue wholesale supplier of automobile ultimately purchased by plaintiff).

[7] As commentators have observed, whether a State's consumer protection laws can be invoked by a legal entity depends on the statutory terms, which may vary from one State to another.  *See generally* Michael Flynn & Karen Slater, *All We Are Saying Is Give Business a Chance: The Application of State UDAP Statutes to Business-to-Business Transactions*, 15 Loy. Consumer L. Rev. 81 (2003); Edward X. Clinton, Jr., *Do Businesses Have Standing to Sue Under State Consumer Fraud Statutes?*, 20 S. Ill. U. L.J. 385 (1996).

Another question is who the plaintiff should be in such a VCPA suit. If a natural person uses a legal entity to contract for consumer goods or services, must the VCPA suit be brought in the entity's name? Or can the natural person file suit?

These are questions that other courts have touched on but that have not yet been answered by Virginia's appellate courts.[8] We cannot answer those questions today, however, because they were neither raised below nor argued here.[9] *See* Rules 5A:18; 5A:20(c). Thus, I join the Court's opinion with the understanding that these important issues await future resolution.

---

[8] *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418, 439 (E.D. Va. 2019) (finding that VCPA's application was not defeated by the fact that the consumer goods were paid for by a third-party corporate purchaser); *Microsoft Corp. v. #9 Software, Inc.*, No. 4:05cv106, 2005 U.S. Dist. LEXIS 36710, at *11 (E.D. Va. Dec. 15, 2005) ("Although a corporation may bring suit under the VCPA, it is clear that the corporation must be engaged in a consumer transaction."); *Wilkins v. Peninsula Motor Cars, Inc.*, 59 Va. Cir. 329, 334 (Newport News 2002) (holding that the VCPA claim was not defeated by the fact that the car was titled in a corporation; "[w]hether the vehicle was to be used for the plaintiff's personal or commercial use, was a question of fact to be decided by jury").

[9] Benkirane has not argued, either in the trial court or here, that the *person* definition in Code § 59.1-198 entitled him to use the corporate form to purchase consumer goods and services from City Concrete.