# COURT OF APPEALS OF VIRGINIA

**Record No. 0116-25-4**

INVITING STRUCTURES, INC., d/b/a STATE OF THE ART LANDSCAPE
v.
MARGIT E. ROYAL, ET AL.

Present: Judges Lorish, Callins and White
Argued at Alexandria, Virginia

Opinion Issued June 23, 2026[*]

## FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Matthew P. Snow, Judge

Warren R. Stein (Warren R. Stein, P.C., on briefs), for appellant.

Stephen C. Price (Theresa D. Small; McCandlish and Lillard, P.C., on brief), for appellees.

## MEMORANDUM OPINION BY
## <u>JUDGE KIMBERLEY SLAYTON WHITE</u>

Inviting Structures, Inc., d/b/a State of the Art Landscape (SOTAL) appeals the circuit court's judgment awarding Margit Royal and Jerry Wolford (Homeowners) monetary damages on their complaint for breach of a landscaping contract and barring SOTAL's counterclaim. SOTAL argues that the circuit court erred by finding that it had committed the first material breaches of the contract and improperly awarded Homeowners damages on their claims for allegedly defective and incomplete work. SOTAL also challenges the circuit court's finding that the contract required formal written change orders. Homeowners assign cross-error to the circuit court's refusal to award them damages to replace a spa tub. For the reasons stated below, we

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

affirm in part, reverse in part, and remand to the circuit court for further proceedings consistent with this opinion.

BACKGROUND[1]

SOTAL provides landscaping services in Virginia. In July 2018, SOTAL contracted with Homeowners to complete a landscaping project and build an outdoor spa tub on Homeowners' property. The contract provided that SOTAL would construct a bluestone terrace, patio, and step sections on the property; plant a Japanese garden; install lighting and a wind chime mount in the garden; accept delivery of the spa tub from the manufacturer and install it on the property; build a structure to house the spa tub mechanics; and complete other specified items for a total price of $232,180. SOTAL was to plant the garden according to a specific plan included in the contract, which designated the number and location of the flowers and trees to be planted.

The contract also provided that Homeowners would pay SOTAL according to a draw schedule. The schedule consisted of an initial deposit of $60,000[2] and four subsequent payments to be made upon completion of different stages of the project. Homeowners would pay $60,000 after concrete subslabs were poured; $60,000 after the veneer stones were laid on the concrete foundation; $40,000 after the spa tub was delivered; and $12,180 after the planting was completed. In the event Homeowners did not pay an invoice when due, SOTAL "reserved the right to cease all work on the project without breaching this agreement until the outstanding balance is settled" and Homeowners would "remain liable for the outstanding balance in the event work must be stopped due to lack of payment."

---

[1] Under settled appellate principles, we view the evidence in the light most favorable to Homeowners, the prevailing party in the trial court. *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023).

[2] The initial deposit included a 50% down payment to order the spa tub.

The contract further specified that any changes to the scope of the work or contract price after the contract's execution "may be accomplished" by change order. The change order "shall be in writing, signed by both parties or approved via email, and shall specify the change in the [w]ork, amount of any adjustment to the [c]ontract price, necessary deposits and the extent of any adjustment in the completion date." The contract did not impose a firm deadline for completing the project but stated that SOTAL anticipated substantial completion by November 2018.

The parties signed the contract, and Homeowners paid the initial $60,000 deposit. Soon after signing, the parties agreed by email that SOTAL would not build the structure to house the spa tub mechanics as specified in the contract, and instead, the mechanics would be placed in a crawl space in the home's basement. The emails did not indicate any agreement to adjust the contract price accordingly. In September 2018, SOTAL sent a subcontractor to the property to begin planting the garden. Later that month, Royal sent an email informing SOTAL that the subcontractor was not planting the garden according to the landscape plan in the contract. Specifically, Royal noted that some Hakone grasses had been planted in the wrong location and that a different plant had been installed in the location where mops were to be planted. Royal instructed SOTAL to halt the planting for two weeks while she was out of town and to not resume the work until she had returned.

On October 4, 2018, SOTAL began pouring concrete subslabs and issued an invoice for the first $60,000 progress payment. Homeowners paid the invoice on October 15, although emails sent on October 21 and 22 warned SOTAL that the weather may soon become too cold to continue pouring concrete. On October 23, the parties agreed by email that Homeowners would pay $1,900 for additional sod installation in the garden and $4,800 for rock removal and additional masonry work on the property—items which were not originally included in the contract. Homeowners also requested that the sod be watered but did not specify a price for the watering. On October 30, Royal

sent SOTAL an email stating that, while the landscape plan in the contract was an "excellent guide," adjustments could be made to the plan where necessary. Royal suggested specific changes to the plan, including using sedum in place of liriope and relocating two cypress trees. She also asked SOTAL to stop planting and ordering new plant material until the sod installation was complete and the parties decided on the placement of the spa tub.

On November 5, 2018, SOTAL issued an invoice for the second $60,000 progress payment, the additional fees agreed to for the sod installation and masonry work, and an additional charge of $2,400 for watering the sod; the invoice reflected a total balance due of $69,100. Homeowners paid $62,000 towards the balance due on this invoice. On November 7, 2018, SOTAL sent an email proposing a $3,450 charge to build an additional wall on the terrace, but Homeowners did not respond. On November 12, 2018, SOTAL sent an email informing Homeowners that a shipment of bluestones needed to complete the masonry work would be delayed. On December 5, 2018, the parties agreed by email to eliminate the wind chime mount from the contract. On February 6, 2019, SOTAL informed Homeowners that the spa tub would be delivered to the property soon and issued an invoice for the third progress payment of $40,000, plus the proposed $3,450 charge for the additional terrace work. On March 6, 2019, SOTAL issued an invoice for the last progress payment of $12,180. Homeowners never paid the last two invoices.

When Homeowners raised concerns about the spa tub delivery and the outstanding invoices, SOTAL proposed an addendum to the contract specifying that the third progress payment would be due only after SOTAL had accepted delivery of the spa tub from the manufacturer, transported the spa tub to the property, completed all plumbing and electric installation, filled the spa tub with water, and rendered the spa tub in a fully operational condition. But Homeowners never signed the addendum or agreed to its terms. On March 7, 2019, Royal sent SOTAL an email expressing her concern that no progress was being made on the landscaping and planting work. SOTAL received

the spa tub from the manufacturer later that month[3] and delivered it to Homeowners on May 3, 2019.

On May 20, 2019, Royal sent SOTAL an email agreeing to the $2,400 charge for the sod watering but disputing the $3,450 charge for the additional terrace work.[4] In late July 2019, Homeowners sent SOTAL several emails complaining that the copper spa tub was discolored, contained several feet of "rancid" rainwater, and needed cleaning. On August 2, 2019, Homeowners informed SOTAL that they would not pay the full balance due on the outstanding invoices because of the issues with the spa tub, the incomplete landscaping and planting work, and other unfinished items. On August 5, 2019, SOTAL responded that it would not perform any further work on the project other than connecting a gas line for the spa tub and closing out permits.

Homeowners subsequently sued SOTAL for breach of contract, alleging that it had performed defective and incomplete work on the project. The list of alleged defects included landscaping deficiencies; a damaged and "irreparable" spa tub; an improperly installed gas line and electrical wiring; cracked bluestones; improperly installed masonry; improper site grading; lack of insulation for spa pipes; and failure to build a structure to house the spa tub mechanics and a wind chime mount for the garden. Homeowners alleged that they had to replace the spa tub and hire other contractors to complete the project and remediate the defects in the landscaping, plumbing, electrical, and masonry work. They sought monetary damages in the amount of $175,000.

---

[3] SOTAL received delivery of the spa tub from the manufacturer on March 12, 2019, and held the spa tub at its facility to repair a scratch caused by the shipping crate. The repair was completed on March 26, 2019.

[4] Royal also agreed to a $5,042.50 credit for plants not installed in the garden; a $400 credit for the wind chime mount which the parties agreed to eliminate; a $1,200 discount on the price of the sod watering; a $350 discount on revisions made to a window in the crawl space; and a $600 discount on mulching work done in the garden.

SOTAL answered the complaint and counterclaimed. SOTAL denied the defects in the spa tub, electrical wiring, site grading, and masonry work. SOTAL asserted that it did not complete the remaining items described in the complaint because it ceased working on the project when Homeowners failed to make the payments due under the contract. SOTAL claimed that Homeowners never paid the $40,000 progress payment due upon spa tub delivery; the $12,180 progress payment due upon planting completion; and an outstanding balance of $12,550 for the additional work that the parties had agreed to after the contract was signed. SOTAL sought to recover a monetary judgment for $64,730 and attorney fees.

In its answer to the complaint, SOTAL raised grounds of defense and affirmative defenses, and requested that Homeowners respond to its allegation that they had failed to "pay as agreed" under the contract and have not paid "pursuant to its terms and conditions."[5] When Homeowners failed to respond,[6] SOTAL moved the circuit court to deem the matter admitted. The circuit court granted the motion. In further pleadings, each party asked the circuit court to find that the other had committed the first material breach of the contract. Homeowners asserted that SOTAL had materially breached the contract by delivering a damaged spa tub and ceasing work on the project, while SOTAL claimed that Homeowners had materially breached the contract by failing to make the progress payments due under the contract.

The circuit court held a bench trial. Royal testified that SOTAL began planting the garden in the fall of 2018, but she became concerned that the subcontractor "seemed to be

[5] Rule 3:11 provides that, if a pleading, motion, or affirmative defense sets up a new matter and contains words expressly requesting a reply, the adverse party must file a response within 21 days either admitting or denying the new matter. Rule 1:4(e) further provides that, where an adverse party was required to reply to an allegation raised in a pleading and fails to deny the allegation, it is deemed to be admitted.

[6] Homeowners moved the circuit court for leave to file a late response, but the court denied the motion.

working off of a different plan" than the landscape plan in the contract and requested that he speak to her before installing any new plants. Royal subsequently asked SOTAL to halt the planting while she was out of town because she wanted to be present to supervise the work. After Royal returned, the parties agreed to delay the rest of the planting due to the changing weather. The parties later engaged in several more discussions about the unfinished planting and landscaping work, but SOTAL never resumed the planting.

Royal believed the "concrete slab had been poured" in October 2018, but other masonry work continued after that. Royal did not believe the veneer stones were completed when Homeowners made the second $60,000 progress payment because a shipment of bluestones needed to complete the work had not yet arrived. Further, after SOTAL ceased work on the project, Homeowners had to hire another contractor to remove and reinstall some of the stonework to repair an electrical wire under the stones.[7]

Homeowners did not inspect the spa tub upon delivery to their property in May 2019; they kept it covered under a tarp until the end of July. When Homeowners uncovered the spa tub, they discovered "tiny areas" of discoloration on the copper surface and rancid water and wood debris in the tub. SOTAL drained the dirty water from the spa tub and filled it with clean water but did not finish connecting the gas line or install a heater needed to operate the spa tub. Apparent corrosion on the spa tub worsened over time. Royal confirmed that Homeowners never made the last two progress payments due under the contract because they believed that the work was unfinished. She also explained that they refused to sign the March 2019 addendum proposed by SOTAL because they believed it contained "threatening" language and did not address all of the unfinished items.

---

[7] The wire controlled the electric lights in the garden.

Homeowners' expert testified that he examined the spa tub and found "localized corrosion" on the surface of the tub. The expert believed SOTAL initially caused the corrosion when it removed the spa tub from its original packaging after receiving it from the manufacturer and repackaged it before transporting it to the property. SOTAL installed a new lid made of treated lumber on the spa tub, wrapped the spa tub in a manner which allowed rainwater to enter the lid, and left steel fasteners in the copper tub. The rainwater, treated lumber, and metals left in the tub caused electrolysis to occur, resulting in minor corrosion. The expert believed that the corrosion worsened over time because the spa tub was not bonded[8] after it was placed on the property. The expert opined that repairing the corrosion would not be cost-effective and that the only "real solution" was to replace the tub.

After Homeowners rested their case, SOTAL moved the circuit court to strike Homeowners' evidence. SOTAL contended that Homeowners committed the first material breach by admittedly failing to make the last two progress payments due under the contract. SOTAL argued that their breach excused its contract performance, so Homeowners could not recover on their claims. Homeowners responded that they were not obligated to make the $40,000 progress payment for the spa tub delivery because they had made the $60,000 progress payment for the veneer stones before the stones were completed. They also contended that they did not have to make the $12,180 progress payment due upon planting completion because the planting was never completed. The circuit court declined to rule on the motion to strike and stated that it would continue hearing evidence.

---

[8] Bonding is a process, completed during installation, which prevents electrical currents from damaging the spa tub.

Dave Klonicke,[9] a co-owner of SOTAL, testified that all of the originally contracted masonry work, including the veneer stones, had been completed when SOTAL received the second $60,000 progress payment. Klonicke stated that the delayed shipment of bluestones was for the added masonry items that the parties had agreed to after signing the contract, not the originally contracted work. Greg Powell, another co-owner of SOTAL, testified that Homeowners directed SOTAL to halt the planting and never gave an instruction to resume the work. Royal told SOTAL the landscape plan was "flexible" and that the parties could make changes to the plan as the work progressed.

After the trial, the circuit court first found that any changes to the contractual scope of work could be enforced only if the parties had executed valid change orders as required by the contract terms. Next, the circuit court found that SOTAL had committed the first material breach of the contract in September 2018 when it failed to plant the garden according to the landscape plan in the contract. The court stated that Royal's email indicated that "plants were not being installed" in the correct locations and found that the breach was material because the "plantings were a major component" of the contract.

The circuit court also found that SOTAL had committed a second material breach of the contract in October 2018 when it issued an invoice for concrete subslabs before completing the subslabs. The court stated that emails exchanged between the parties in October showed that the concrete foundation was still incomplete after SOTAL billed for the work. The court stated that the parties had entered a fixed fee contract with a specific payment schedule and that billing for items before they were due "defeats the purpose" of such a contract, thus materially breaching the contract. The circuit court concluded that SOTAL was barred from recovering on its counterclaim given the findings of material breach.

---

[9] Klonicke's name is misspelled in the trial transcript as "Clinicy."

Finally, the circuit court assessed the damages due Homeowners. The court declined to award $131,000 for the replacement of the spa tub, finding that the defects with the tub were a minor, "cosmetic" issue that did not warrant a full replacement. The circuit court remarked that awarding the cost of replacement here would create a "windfall scenario" in which Homeowners effectively would receive two spa tubs and that "nothing" in the contract provided for the visual appearance of the spa tub. But the circuit court awarded Homeowners damages for expenses to complete and remediate defects in the landscaping, plumbing, electrical, and masonry work.[10] By final order entered on December 19, 2024, the circuit court entered judgment for Homeowners and awarded them monetary damages in the amount of $22,701.92 and court costs. The circuit court dismissed SOTAL's counterclaim with prejudice. SOTAL timely appealed, and Homeowners filed assignments of cross-error.

## ANALYSIS

We review "questions of law de novo, including those situations where there is a mixed question of law and fact." *Taylor v. Northam*, 300 Va. 230, 250-51 (2021) (quoting *Napper v. ABM Janitorial Servs.-Mid Atl., Inc.*, 284 Va. 55, 61 (2012)). "We must afford deference to the trial court's factual findings, but we review de novo its application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014). This Court will not disturb the circuit court's factual determinations unless "they are 'plainly wrong or without evidence to support [them].'" *Grayson v. Westwood Buildings L.P.*, 300 Va. 25, 58 (2021) (alteration in original) (quoting Code § 8.01-680). "How the governing legal standard

---

[10] The circuit court awarded Homeowners $3,953.58 to repair and complete installation of electric lights in the garden; $825 to install a gas line and heater for the spa tub; $166.20 to insulate the spa pipes; $5,285 to remediate masonry work including repairing cracked bluestones and removing stones to repair an electrical wire; and $12,471.60 to remediate landscaping defects including amending the soil, mulching, weeding and removing dead plants, replanting liriope, and removing rocks and plants from a garden bed. The circuit court declined to award $2,000 for removal of stone dust left on the property from the concrete paving.

applies to those presumptively correct facts, however, is a question of law entitled to no deference on appeal." *Id.* "The interpretation of a contract is a question of law that this court reviews de novo." *Bolton v. McKinney*, 299 Va. 550, 554 (2021).

### I. Recovery is not barred by the first-material-breach rule here.

"Generally, a party who commits the first [material] breach of a contract is not entitled to enforce the contract."[11] *Horton v. Horton*, 254 Va. 111, 115 (1997). "An exception to this rule arises when the breach did not go to the 'root of the contract' but only to a minor part of the consideration." *Id.* (quoting *Neely v. White*, 177 Va. 358, 366 (1941)). In determining whether a breach goes to the "root of the contract," the Supreme Court of Virginia has considered the monetary damages of the breach in comparison with the total value of the contract. *See Clevert v. Jeff W. Soden, Inc.*, 241 Va. 108, 111 (1991) (finding a material breach where damages awarded for defective work on a construction contract exceeded ten percent of the total contract price); *see also Neely*, 177 Va. at 366 (holding that, where a party had substantially paid under the contract, its failure to render full payment was not a material breach excusing the other party's performance but merely abated the damages).

The Supreme Court of Virginia has declined to apply a strict no-recovery rule in cases involving construction contracts with competing, offsetting claims where deviations from the contract were made in good faith. *Kirk Reid Co. v. Fine*, 205 Va. 778, 788-90 (1965). In such cases, the Court has held that even "willful departures" from contract specifications do not necessarily meet the modicum of bad faith needed to completely bar a contractor's recovery of payments owed and has instead favored permitting the contractor to collect an offset against any damages awarded. *Id.* at 789. The Court explained that a strict application of the no recovery

---

[11] "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton v. Horton*, 254 Va. 111, 115 (1997).

rule against a contractor in all cases where the contractor did not perform to "precise exactness" would result in an unjust windfall for the other party. *Id.*

### A. The first-material-breach rule does not bar SOTAL's recovery.

Here, SOTAL argues that the circuit court erred by finding that its failure to plant the garden according to the exact contract specifications constituted a material breach of the contract. The record shows that, soon after SOTAL began planting the garden, Royal complained that certain plants were not being installed in the location designated in the landscape plan. Royal testified at trial that she asked SOTAL to halt planting because she was "concerned" that the subcontractor was not following the landscape plan. Given this record evidence, we agree with the circuit court's finding that SOTAL failed to perform to exact contract specifications. *See Grayson*, 300 Va. at 58.

But this breach is insufficient to trigger the first-material-breach rule. It is unclear from the record whether Homeowners incurred any damages to remediate these specific issues; in any case, the circuit court only awarded $12,471.60 to correct all landscaping and planting defects. The damages awarded to correct the planting issues, if any, constituted only a minor portion of the $232,180 contract price. *See Clevert*, 241 Va. at 111. Further, the record does not show that SOTAL acted in bad faith; the contractor halted the planting at Royal's request and met with her to discuss outstanding issues. *See Kirk Reid Co.*, 205 Va. at 789. Thus, an exception to the first-material-breach rule applies. *Id.* at 788-90.

SOTAL also challenges the circuit court's finding that it materially breached the contract by invoicing for the concrete subslabs before the work was completed. The circuit court concluded that the specified work was ongoing because the parties' emails indicated that SOTAL continued pouring concrete after it invoiced for the first $60,000 progress payment on October 4, 2018. But the contract contained no provisions pertaining to invoicing or specifying when an

*invoice* may be issued for impending work, and we construe contracts "without adding terms that were not included by the parties." *PMA Cap. Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (2006). Rather, the contract provided that the *payment* would not be due until the work was completed.

To the extent that the invoice breached the contract by requesting payment before it was due, any such breach is insufficient to trigger the first-material-breach rule here. *See Kirk Reid Co.*, 205 Va. at 788-90. The record shows that Homeowners voluntarily paid the invoice before the work was completed, did not object to the timing of the payment, and did not incur damages because SOTAL fully completed the work later that month. The record does not reflect that SOTAL habitually asked for payment before the corresponding work was completed,[12] so we cannot say that it acted in bad faith. Any breach, therefore, does not warrant application of the first-material-breach rule. *See id.*

### B. The first-material-breach rule does not bar Homeowners' recovery.

SOTAL also assigns error to the circuit court's decision to award Homeowners damages on their claims for incomplete and defective work, given their admission that they had not paid the full amount due under the contract. The contract provided that a $40,000 progress payment was due upon delivery of the spa tub and contained no terms permitting retainage for incomplete work. *See PMA Cap. Ins. Co.*, 271 Va. at 358. The record shows that SOTAL received the spa tub from the manufacturer in March 2019 and delivered it to Homeowners on May 3, 2019. But Homeowners did not make the corresponding progress payment.[13] And the record shows that

---

[12] The October 4, 2018 invoice for the concrete subslabs stated that payment was "due" the same day. But the remaining invoices do not specify a due date for payment.

[13] Nor does the record support Homeowners' argument that no further payment was due under the contract because SOTAL never completed the veneer work. Homeowners pointed to a delayed shipment of bluestones as evidence that the work was not completed. But Klonicke testified that the shipment was intended for additional masonry items, not the originally

Homeowners rejected a proposed modification to the contract that would have required SOTAL to complete additional work before receiving payment. Given this record evidence and the express terms of the contract, we conclude that Homeowners breached the contract.

But given the nature and scale of the breach, Homeowners' substantial payment under the contract, and the offsetting claims, failure to render full payment does not bar their recovery under the first-material-breach rule. *Kirk Reid Co.*, 205 Va. at 788-90; *see also Neely*, 177 Va. at 366. The record shows that Homeowners paid a total of $192,170[14] on the contract price of $232,180. Homeowners substantially paid under the contract, so their failure to pay the full amount due did not go to the "root of the contract" but merely to a minor portion of the consideration. *See Neely*, 177 Va. at 366. And there is no showing of bad faith because Homeowners believed the work was incomplete. Thus, their failure to render full payment under the contract merely offset damages. *Id.*

We find that an exception to the first-material-breach rule applies and both parties are entitled to recover on their competing claims.[15] Therefore, we reverse the circuit court's dismissal of SOTAL's counterclaim and remand to the circuit court to assess appropriate offset damages owed to SOTAL on the counterclaim.

---

contracted veneer work. And Homeowners' later remediation of some minor defects in the stonework does not support a finding that the work was never completed.

[14] The record shows that Homeowners paid the initial $60,000 deposit, two $60,000 progress payments, and $12,170 for additional items.

[15] Considering that no material breach barred either party's recovery, we do not consider SOTAL's argument that the circuit court exceeded its authority by finding material breach on different grounds than those argued by Homeowners. *See Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023) (holding that the "doctrine of judicial restraint dictates that we decide cases 'on the . . . narrowest grounds available'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

*II. The circuit court properly awarded Homeowners damages on their claims.*

Virginia law recognizes two alternative methods of awarding damages for defective work—the cost rule and the value rule. *Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 89 (2008). Under the cost rule, recovery is based on the "cost of correcting the defects in the [construction]." *Id.* (alteration in original) (quoting *Mann v. Clowser*, 190 Va. 887, 903 (1950)). The "cost measure is appropriate *unless* the cost to repair would be grossly disproportionate to the results to be obtained, or would involve unreasonable economic waste." *Lochaven Co. v. Master Pools by Schertle, Inc.*, 233 Va. 537, 543 (1987). Alternatively, the value rule applies when the cost of remediating the defect is unreasonable, compared to the benefit obtained. *Id.* at 543-44. Under the value rule, damages are based on "the difference between the value of the [structure] properly completed . . . and the value of the defective structure." *Nichols Constr. Corp.*, 276 Va. at 89 (first alteration in original) (quoting *Mann*, 190 Va. at 903).

SOTAL challenges the circuit court's award of damages to Homeowners, arguing that the court automatically awarded the damages upon finding material breach and did not properly consider them. But the record reflects that the circuit court considered the damages sought for each item and awarded only those damages that it found appropriate, given the contract and evidence. Specifically, the court declined to award damages for the replacement of the spa tub, finding the asserted defects were minor and "cosmetic" in nature, but it awarded damages for the remedial work performed. Given the circuit court's fact-finding, we reject SOTAL's assertion that the court failed to evaluate the damages.

We likewise find no error in the circuit court's calculations. Homeowners challenge the circuit court's refusal to award damages to replace the spa tub, arguing that the record evidence controverted the court's finding that the issues were minor and cosmetic. Homeowners further

contend that SOTAL caused the damage by improperly handling the spa tub during delivery and failing to bond the spa tub. Here, the record showed that upon delivery, the spa tub's surface contained only "tiny areas" of discoloration. Homeowners' expert confirmed the minor nature of the issues by testifying that apparent corrosion on the spa tub was "localized" to certain areas.[16] The circuit court's finding that the issues with the tub were minor and cosmetic was not plainly wrong given the record evidence, so we defer to the court's fact-finding. *See Grayson*, 300 Va. at 58. In these circumstances, replacement of the tub was not the appropriate remedy.[17] *See Lochaven*, 233 Va. at 544 (refusing to award cost that would have been grossly disproportionate to the benefit obtained).

We conclude that the circuit court properly awarded damages to Homeowners on their claims for defective and incomplete work and correctly assessed the amount of damages owed on the claims. So we affirm the court's judgment and award of $22,701.92 in damages to Homeowners.

> *III. Payment for most additional work was enforceable as change orders under the contract terms and should be included in the offset damages.*

Where a construction contract contains an express provision requiring change orders, any changes in the scope of the work, except very minor ones, are not enforceable without a change order that conforms to the contract terms. *Kirk Reid Co.*, 205 Va. at 783. Thus, in *Kirk Reid* the Supreme Court strictly enforced a change-order provision in a construction contract that required a written order, issued by either party, approving changes to the contractual scope of work. *Id.* at

---

[16] Although the expert observed that the blemishes on the spa tub became more severe over time due to a lack of bonding, the contract did not require SOTAL to bond the spa tub.

[17] This aspect of the case was tried based on the cost measure of damages, so the "adequacy of the award under that theory is the only matter before us." *Lochaven*, 233 Va. at 543.

782-84. "When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *PMA Cap. Ins. Co.*, 271 Va. at 358.

SOTAL argues that the circuit court erred by failing to enforce payment for additional work that the parties had agreed to after the contract was signed.[18] SOTAL contends that the parties waived enforcement of the change-order provision by establishing a "course of dealing" by which they often agreed to changes in the scope of the work without executing formal written change orders. We disagree that the record supports SOTAL's waiver argument and find SOTAL's cited caselaw to be inapplicable,[19] but we conclude that most of the agreed changes to the work were enforceable under the change-order provision.

The contract authorized changes to the scope of the work when agreed to "in writing" and either signed by both parties or "approved via email," and it provided that the parties should specify the changes and any resulting adjustment to the contract price. In emails exchanged on October 23, 2018, and May 20, 2019, the parties agreed to the $1,900 charge for the additional sod installation; the $4,800 charge for the rock removal and additional masonry work; the $2,400 charge for watering the sod; credits for incomplete planting work and a wind chime mount that was not constructed; and price discounts for the sod watering and other completed items. The

---

[18] The circuit court did not rule on whether payment could be enforced for any specific items of work and merely held that changes to the contractual scope of work were not enforceable without a valid change order.

[19] SOTAL cites several cases including *Reston Surgery Ctr. v. City of Alexandria*, 62 Va. App. 549 (2013), and *Reid v. Boyle*, 259 Va. 356 (2000), in support of its argument that the parties implicitly waived enforcement of the change-order provision through a "course of dealing." But those cases did not address waiver of a change-order provision in a construction contract. And SOTAL does not sufficiently meet the standard for waiver—"clear, precise, and unequivocal" evidence that the other party expressly waived enforcement. 1 Virginia Construction Law and Practice § 5.03; *see also Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*, 726 F. Supp. 2d 595, 603-04 (E.D. Va. 2010) (finding no waiver of change order provision and precluding recovery of costs that were not approved by written change order).

parties also agreed by email that SOTAL would not build the structure to house the spa tub mechanics; no credit to the Homeowners was approved.

The record shows that Homeowners disputed only a $3,450 charge for additional terrace work[20] and accepted by email the other items and corresponding charges and credits. Because the parties agreed to these changes by email as permitted under the contract terms, they are enforceable, and any payments owed for the additional items should be included in offset damages. *See Kirk Reid Co.*, 205 Va. at 783.

CONCLUSION

The circuit court erred by dismissing SOTAL's counterclaim for payments owed under the contract, including payment for additional work that is enforceable under the contract terms. But the court properly awarded Homeowners damages on their claims for defective work. We therefore affirm the circuit court's judgment in part, reverse in part, and remand to the lower court for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

---

[20] Although Royal conceded at trial that Homeowners had agreed to the additional terrace work, the record does not show that they approved the proposed $3,450 charge by email or in a signed writing as required by the contract terms.